[No. 51148-9.   En Banc.   July 25, 1985.]

DONNA BOWMAN, *Individually and as Guardian, Appellant,* v. JOHN DOE TWO,
· ET AL, *Respondents.*

*Billett, Comfort & Rosenow,* by *Terry E. Lumsden,* for appellant.

*Burgess, Kennedy, Fitzer & Strombom, P.S.,* by *Timothy R. Gosselin,* for respondents.

UTTER, J.—Donna Bowman appeals from the trial court's grant of a CR 12(b)(6) motion dismissing respondent, an attorney who represented her son, from an action alleging professional negligence resulting in injuries both to her son and to the parent–child relationship. Although Mrs. Bowman's complaint, if true, tells a story of inappropriately handled juvenile justice, under no theory of law can respondent be held liable to Mrs. Bowman for representing her minor son in matters under RCW 13.32A, Procedures for Families in Conflict. We find the dismissal proper and affirm.

Donna Bowman, a single woman, commenced this action on her behalf and as guardian ad litem for her 17–year–old

son, Douglas, on June 20, 1983.[1] Respondent John Doe Two, actually William Adams, an attorney practicing in Tacoma, is one of several defendants. Other defendants in the action are the Washington Department of Social and Health Services, the Worldwide Church of God, John Doe One and Jane Doe One, and Ken Burrell.

An action may be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." *Orwick v. Seattle,* 103 Wn.2d 249, 254, 692 P.2d 793 (1984); *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978). Bowman's factual allegations are presumed to be true for the purpose of this motion.

According to Donna Bowman, she raised her son by herself except for occasional times when friends met through her church had physical custody of the boy because she was hospitalized or otherwise incapable of providing for her son. Since he was about 10, Bowman asserts, the mother–child relationship began to deteriorate due to the influence of defendant Ken Burrell, a single man then in his mid–20's. Mrs. Bowman alleges that Burrell has abused her son. Donna Bowman, her son and Burrell met through membership in the Worldwide Church of God.

On February 13, 1982, Mrs. Bowman filed an assault charge against her son for kicking and striking her the night before. Following a few months of little conflict, on April 26, 1982, Douglas Bowman retained William Adams to represent him at the juvenile court hearing on the assault charge which was scheduled for the evening of May 6, 1982. Burrell paid some, if not all, of Douglas Bowman's legal fees.

On April 29, 1982, Douglas Bowman moved out of his mother's house. He stayed with Mr. Ron Wagner, another

---

[1]Upon motion of some of the defendants, and over objection of the plaintiff, the trial court terminated her guardianship on December 24, 1983, as the child had become 18 in July of that year.

member of the church. With Adams' help, on May 5, 1982, Douglas filed a petition for "Alternative Residential Placement" (ARP), pursuant to RCW 13.32A. The hearing was set for 1:30 p.m. the following day. The petition stated that Douglas had been locked out of the family residence since Friday, April 30, 1982. Although a child's petition shall only ask that placement outside the parent's home be approved, RCW 13.32A.150, Douglas Bowman's petition sought alternative residential placement with Mr. Ken T. Burrell, who was then living and teaching in eastern Oregon. The petition, however, listed Burrell's address as Enumclaw.

Upon the filing of a proper petition, RCW 13.32A.160 requires that the juvenile court (a) schedule a date for a fact–finding hearing; notify the parent and child of such date; (b) notify the parent of the right to be represented by counsel and, if indigent, to have counsel appointed for him or her by the court; (c) appoint legal counsel for the child; (d) inform the child and his or her parent of the legal consequences of the court approving or disapproving an alternative residential placement petition; and (e) notify all parties of their right to present evidence at the fact–finding hearing.

Donna Bowman received notice of the ARP hearing at 7:15 a.m., May 6, 1982. Only at that time did she first become aware of the proposed placement with Burrell. The notice she received did not inform her of her right to counsel or her right to present evidence. Although Donna Bowman attests that she signed in with the receptionist prior to the 1:30 p.m. hearing time, she was not called into the courtroom.

The ARP hearing lasted only a few minutes. Clerk's Papers, at 41–45. Without the fact–finding hearing required by statute, and without a guardian ad litem for Douglas,[2]

---

[2]The court, inquiring whether a guardian ad litem was appointed, remarked, "This is a rather unusual situation." Adams replied that because Burrell was in town for only a few days, "there is a real critical time factor here, we simply did not have time to get a Guardian ad Litem appointed." Clerk's Papers, at 43.

the court commissioner granted the petition. Although the statute makes no provision for temporary placement, the commissioner signed an "Order for Temporary Alternative Residential Placement" presented by Adams the next day, pending a fact–finding hearing scheduled for June 23, 1982. It does not appear that the court informed Douglas Bowman of the legal consequences of this approval, contrary to the statute's directive.

After the ARP hearing, Donna Bowman retained counsel (defendant marital community John Doe One and Jane Doe One) to attempt to set aside the order. For various reasons no further hearings were held. A caseworker's notes indicate that Douglas' and Donna's attorneys stipulated to dismissal of the June 23, 1982, hearing with the understanding that Burrell would return Douglas to Donna. Her son was not returned. Mrs. Bowman has not seen her son since the May 6, 1982, hearing.

The complaint states the cause of action against defendant Adams:

> Defendant "John Doe Two" negligently represented the minor child, although he was hired and paid by defendant Ken Burrell, thereby grossly exhibiting a conflict of interest. "John Doe Two" failed to properly investigate the facts of this case, made negligent representations to persons involved, and otherwise his negligence contributed to the destruction of the mother and child relationship.

Clerk's Papers, at 5.

■ A claim for which relief can be granted is based upon facts which constitute invasion of a recognized legal right. *Orwick,* at 254. The present action alleges negligent representation by an attorney, also known as legal malpractice. Once an attorney–client relationship is established, the elements for legal malpractice are the same as for negligence. *See Sherry v. Diercks,* 29 Wn. App. 433, 437, 628 P.2d 1336 (1981); *Hansen v. Wightman,* 14 Wn. App. 78, 88, 538 P.2d 1238 (1975). Negligent conduct consists of (1) the existence of a duty owed to the complaining party;

(2) a breach thereof; and (3) a resulting injury. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975). Just as negligence alone does not necessarily result in legal consequences, *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985); *LaPlante,* at 159, for an attorney's negligent conduct to constitute legal malpractice, the breach of duty must also be a proximate cause of the resulting injury. *Laux v. Woodworth,* 195 Wash. 550, 552, 81 P.2d 531 (1938); *Sherry v. Diercks, supra* at 437; *Hansen v. Wightman, supra* at 88.

Adams brought this motion to dismiss claiming he had no duty to Donna Bowman. The motion was granted by the trial court. Following the English tradition, the United States Supreme Court held in 1879 that "[b]eyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party . . ." *Savings Bank v. Ward,* 100 U.S. 195, 200, 25 L. Ed. 621 (1879). In that case, an attorney overlooked a previously recorded deed in a title search for a client. After the client defaulted, the bank unsuccessfully sought recovery against the attorney. Without privity, the court held, there could be no duty owed the bank and without duty there could be no breach, hence no cause of action for negligence. *Savings Bank,* at 200.

Since *Savings Bank,* however, there has been an "assault upon the citadel of privity", *Ultramares Corp. v. Touche,* 255 N.Y. 170, 180, 174 N.E. 441, 445 (1931) (Cardozo, J.). As Prosser writes:

> the absence of "privity" between the parties makes it difficult to impose any duty to the plaintiff upon the contract itself. But by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured.

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 93, at 667–68 (5th ed. 1984). A number of states, led by California, have relaxed the privity

requirement for attorney malpractice actions to hold attorneys liable to persons not their clients. *See, e.g., Heyer v. Flaig,* 70 Cal. 2d 223, 449 P.2d 161, 74 Cal. Rptr. 225 (1969); *Ogle v. Fuiten,* 102 Ill. 2d 356, 466 N.E.2d 224 (1984); *Fickett v. Superior Court,* 27 Ariz. App. 793, 558 P.2d 988 (1976); *McAbee v. Edwards,* 340 So. 2d 1167 (Fla. Dist. Ct. App. 1976). Some states recognize a cause of action by a third party in contract only. *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983). Other states allow the third party to bring the action either in contract or in tort. *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81, 84 (1981); *Lucas v. Hamm,* 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), *cert. denied,* 368 U.S. 987, 7 L. Ed. 2d 525, 82 S. Ct. 603 (1962). In all of these cases, the third party claimant was a legatee who was deprived of taking under a negligently drafted will.[3]

Washington allows an action for legal malpractice to be framed either as a tort or a breach of contract. *Peters v. Simmons,* 87 Wn.2d 400, 404, 552 P.2d 1053 (1976). Although our court has not addressed the privity requirement, we have imposed liability upon an attorney when the intended beneficiary hired the attorney to draft the will. *Schirmer v. Nethercutt,* 157 Wash. 172, 288 P. 265 (1930). In addition, the Court of Appeals has gone so far as to say that the malpractice plaintiff need not be the client, but "only an injured party." *Hansen v. Wightman,* 14 Wn. App. at 88 n.2. Although an attorney's duty does at times extend beyond the client, the *Hansen* dictum goes too far. To bring a malpractice action, there must be a basis for a duty between the plaintiff and the attorney. R. Mallen & V. Levit, *Legal Malpractice* § 80 (2d ed. 1981).

Duty may be found under two theories. California has adopted a multi–criteria balancing test which includes as a factor foreseeability of harm to the plaintiff. A more tradi-

---

[3]In addition, a cause of action by a third party against an attorney has been allowed for negligent title examination. *United Leasing Corp. v. Miller,* 45 N.C. App. 400, 263 S.E.2d 313 (1980).

tional approach is based on the concept of a third party beneficiary contract. The factors enumerated in the leading California case, relaxing the privity requirement for attorney malpractice, are:

> [T]he determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm.

*Lucas v. Hamm,* 56 Cal. 2d at 588. Inquiry by California courts has primarily focused, however, on whether the attorney and client intended to affect the plaintiff. *See* R. Mallen & V. Levit, at 157. Illinois, mindful "that liability for negligence not extend to an unlimited and unknown number of potential plaintiffs", limits liability to those intended to benefit from the established attorney–client relationship. *Pelham v. Griesheimer,* 92 Ill. 2d 13, 20, 440 N.E.2d 96, 99 (1982). So that the attorney's obligations to the client remain paramount, plaintiffs "must allege and prove facts demonstrating that they are in the nature of third–party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort." *Pelham,* 92 Ill. 2d at 20.

There are many reasons why the trial court ruling is correct. Mrs. Bowman had no contractual relationship with respondent Adams. Her son hired Adams to represent him in an attempt to have the court place him in a home other than his mother's. No duty could be owed Mrs. Bowman by Adams under either the California or the Illinois theories. Illinois' beneficiary test does not apply in an adversary context. Furthermore, although it was argued that harm to Donna Bowman was foreseeable by Adams' representation of her son, in no instance has a court found liability to a third party in an adversarial relationship and we find no policy reason for extending that liability. *See, e.g.,* R.

Mallen & V. Levit, at 156; *Norton v. Hines,* 49 Cal. App. 3d 917, 123 Cal. Rptr. 237 (1975). Existence of a duty to an adversary party beyond the courtesy and respect owed all participants in the legal process, CPR DR 7–101(A)(1), would interfere with the undivided loyalty an attorney owes a client and would diminish an attorney's ability to achieve the most advantageous position for a client.

■ Although our review of the record shows that the juvenile court granted placement to Burrell in apparent disregard of the statutory procedure for alternative residential placement, and Adams may have failed to completely inform the court, he did nothing to deceive the court and breached no duty to Mrs. Bowman. While it may be argued that attorneys representing children should be more conciliatory in certain domestic proceedings, *see* Long, *When the Client Is a Child: Dilemmas in the Lawyer's Role,* 21 J. Fam. L. 607 (1982–1983), neither the present Code of Professional Responsibility nor the Families in Conflict statute alter a lawyer's advocacy responsibility when a child is the client.

Dismissal of Adams from the complaint was proper. We affirm the trial court.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

After modification, further reconsideration denied November 6, 1985.