[No. 53052–1. En Banc. December 17, 1987.]

ALVIN STANGLAND, ET AL, *Appellants,* v. NORMAN D. BROCK, ET AL, *Respondents.*

---

*Sheila M. Huber* and *James J. Gillespie,* for appellants.

*MacGillivray & Jones,* by *Roger F. Chase,* for respondents.

DURHAM, J.—The beneficiaries of a will brought this action for damages against two attorneys and their law firm, alleging that as a result of the attorneys' negligence,

they were unable to take assets originally devised to them. The trial court granted the defendants' CR 12(b)(6) motion to dismiss the action for failure to state a claim upon which relief could be granted. We affirm.

An action may be dismissed under CR 12(b)(6) only if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *Bowman v. John Doe,* 104 Wn.2d 181, 183, 704 P.2d 140 (1985) (quoting *Orwick v. Seattle,* 103 Wn.2d 249, 254, 692 P.2d 793 (1984); *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978)). For purposes of this motion, the plaintiffs' factual allegations are presumed to be true. *Bowman,* at 183.

Respondents Norman Brock and Kenneth Carpenter are attorneys practicing in the Davenport office of the law firm of respondent Underwood, Campbell, Brock & Cerutti, P.S. Appellants Alvin Stangland and Bruce Kintschi were designated as beneficiaries in the will of Ralph Schalock, now deceased.

Brock prepared the will and Schalock signed it in April 1979. Before the execution of the will, Brock had been the exclusive personal attorney for Schalock in all of his business and personal affairs. Schalock had been a client of the Underwood, Campbell, Brock & Cerutti firm and its predecessor for many years.

Schalock asked Brock to draft the will to leave all of his real property to appellants. At the time, Schalock's only real property of substantial value was a farm in Lincoln County. In their amended complaint, appellants alleged that Brock knew that Schalock's intent was "to pass the principal asset of his estate, his farm land," to them.

The will drafted by Brock provides as follows in paragraph 4:

> I hereby give, devise and bequeath any and all real property owned by me at the time of my death unto Alvin Stangland and Bruce Kintschi equally, share and share alike, as their sole and separate property.

Paragraph 5 of the will left the residue of Schalock's property of every kind to Troy Rux and Joseph Kintschi, in equal shares.

On or about February 1, 1982, Carpenter prepared a real estate contract for the purpose of selling Schalock's farm to Frank and Janet Titchenal. Before the contract was executed, Carpenter did not discuss it with Brock and did not review Schalock's will or file. Appellants assert that although the firm circulated to its attorneys a memo reporting on new matters being handled in the firm, Brock did not notice that the real estate contract was being prepared and was not aware that the property was being sold. Appellants also assert that neither Brock nor Carpenter conferred with the other regarding Schalock's property or estate plan, and neither informed Schalock that the sale of the property on a real estate contract would affect the disposition of his estate.

On May 7, 1982, Schalock died. His will was admitted to probate. A dispute arose as to whether the vendor's interest in the real estate contract would pass to appellants, or to Troy Rux and Joseph Kintschi, the residuary beneficiaries. Litigation ensued between appellants and the residuary beneficiaries, ultimately resulting in a settlement by which appellants received 60 percent of the balance owing under the real estate contract.

Subsequently, appellants brought this action against respondents Brock, Carpenter and their law firm, seeking damages for professional negligence. Appellants alleged that in preparing Schalock's will, Brock neglected to provide for the effectuation of Schalock's intent to pass the principal asset of his estate, the farm, to them. They further alleged that by causing the farm to be conveyed by real estate contract to the Titchenals, respondents negligently disregarded the intent manifested by Schalock in his will. Appellants asserted that respondents did not advise Schalock that the effect of the sale on the real estate contract would be contrary to the intent expressed in his will. Appellants alleged that as a result of respondents' negli-

gence and breach of duty to Schalock, appellants were unable to take the real estate originally devised to them.

Respondents brought a CR 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court entered an order granting the motion to dismiss. Appellants appealed to the Court of Appeals, which certified the case to this court.

This court has long held that for purposes of administration of an estate, a vendor's interest in an executory real estate contract should be treated as personal property rather than real property. *In re Estate of Fields,* 141 Wash. 526, 528, 252 P. 534 (1927). *See also Freeborn v. Seattle Trust & Sav. Bank,* 94 Wn.2d 336, 340, 617 P.2d 424 (1980); *Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 782, 567 P.2d 631 (1977); *In re Estate of Eilermann,* 179 Wash. 15, 18, 35 P.2d 763 (1934). Under this rule, Schalock's interest in the real estate contract for the sale of his farm would be personal property for purposes of the administration of his estate. Schalock's will provided that only his real property would pass to appellants, and the remainder of his property would pass to the residuary beneficiaries. Hence, if Schalock's interest in the real estate contract was personal property for administration purposes, it would pass not to appellants, but to the residuary beneficiaries pursuant to the terms of the will. The question we must decide is if, under these circumstances, appellants have a cause of action against respondents for professional negligence with respect to their handling of Schalock's affairs.

In an action for legal malpractice sounding in negligence, the plaintiff must establish initially the existence of an attorney–client relationship. *Bowman v. John Doe,* 104 Wn.2d 181, 185, 704 P.2d 140 (1985). Once such a relationship is shown, the elements of such a legal malpractice action are the same as those of an action for negligence. These elements are: (1) the existence of a duty owed to the plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) a proximate cause between the breach of duty and the resulting injury. *Bowman,* at 185–86.

Traditionally, privity of contract between the parties has been required as a basis for establishing a duty in a legal malpractice action. Hence, attorneys' exposure to liability for malpractice has been confined to their clients. *See* R. Mallen & V. Levit, *Legal Malpractice* §§ 71, 72 (2d ed. 1981). However, as we recognized in *Bowman,* at 186–87, the modern trend is to relax the privity requirement, allowing legal malpractice actions to be brought by persons other than the clients of attorneys in some factual situations. In the absence of privity, there must be some other basis for a duty between the attorney and the plaintiff. *Bowman,* at 187; *see also* R. Mallen & V. Levit § 80.

In the present case, an attorney–client relationship existed between respondents and Schalock. However, there was no privity of contract between appellants and respondents. Therefore, in order for appellants to have a cause of action for legal malpractice, they must show that there is some other basis upon which respondents owed them a duty.

In *Bowman,* we observed that a duty between an attorney and a plaintiff who is not the client may be found under two theories. *Bowman,* at 187. Under one theory, first adopted in California, a multi–factor balancing test is applied to determine if an attorney owed a duty to a plaintiff. The factors in the test are: the extent to which the transaction was intended to affect the plaintiff; the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury; the policy of preventing future harm; and the extent to which the profession would be unduly burdened by a finding of liability. *See, e.g., Heyer v. Flaig,* 70 Cal. 2d 223, 227, 449 P.2d 161, 74 Cal. Rptr. 225 (1969); *Lucas v. Hamm,* 56 Cal. 2d 583, 588, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), *cert. denied,* 368 U.S. 987 (1962). *See also* R. Mallen & V. Levit § 80. The inquiry under this multi–factor test has generally focused on whether the attorney's services were intended to affect the plaintiff. *See Bowman,* at 188; R. Mallen & V.

Levit § 81.

The second theory for finding a duty between the attorney and the plaintiff in the absence of privity is based on the concept of a third party beneficiary contract. The plaintiff must prove that he or she was intended to benefit from the established attorney–client relationship. *See, e.g., Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983); *Pelham v. Griesheimer,* 92 Ill. 2d 13, 20, 440 N.E.2d 96 (1982); *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81 (1981). *See also Bowman,* at 188; R. Mallen & V. Levit § 80 (2d ed. 1981 & 2d ed. Supp. 1985).

In most other jurisdictions where the issue has been considered, courts have held that an attorney who agrees to draft a will for his client owes some duty to the intended beneficiaries of the will, either under the multi–factor balancing test or the third party beneficiary theory. *See, e.g., Heyer v. Flaig, supra; Lucas v. Hamm, supra; Needham v. Hamilton,* 459 A.2d 1060 (D.C. 1983); *Guy v. Liederbach, supra; Stowe v. Smith, supra; McAbee v. Edwards,* 340 So. 2d 1167 (Fla. Dist. Ct. App. 1976). *See also* R. Mallen & V. Levit § 80. Those courts that have applied the multi–factor test have reasoned that the drafting of the will is intended to affect the beneficiaries, it is foreseeable that the beneficiaries may be harmed if the will is drafted improperly, the intended beneficiaries would have received benefits but for the attorney's alleged negligence, and if the beneficiaries could not recover for the attorney's alleged negligence, no one could. *See Lucas,* at 589. Under the third party beneficiary theory, courts reason that the beneficiaries of the will are intended to benefit from the relationship between the testator and the attorney drafting the will, because an integral purpose of drafting the will is to provide for the beneficiaries. *See Lucas,* at 590; *Stowe,* at 197–98.

Nevertheless, even if a duty is owed, the law will give it recognition and effect only as it is defined by a particular standard of conduct. In *Lucas v. Hamm, supra,* an attorney drafted a will so that it violated the rules relating to perpetuities and restraints on alienation. The court held that,

while an attorney who drafted a will owed a duty to the intended beneficiaries of the will, the beneficiaries in that particular case had no cause of action because the attorney's errors in drafting the will were not so extraordinary as to violate the standard of care applicable to attorneys. *Lucas,* at 591–93.

In *Heyer v. Flaig, supra,* the testatrix retained an attorney to prepare her will, telling him that she wished all of her estate to pass to her daughters, and that she intended to marry. The attorney drafted a will which purported to leave the entire estate to the testatrix's daughters, but did not mention her future husband, except for naming him executor. After executing the will, the testatrix married. Following her death, her husband claimed a portion of the estate as a post–testamentary spouse. The daughters brought an action against the attorney, alleging that he negligently failed to advise their mother of the consequences of a post–testamentary marriage, to include in the will any provision as to the intended marriage, and to advise her after the marriage of the legal consequences of omitting from the will any provision regarding her husband's claim to a share of her estate. The court reiterated its holding in *Lucas* that an attorney who agrees to draft a will for his client has a duty to the intended beneficiary. *Heyer,* at 228. It further stated that the attorney's duty is "to act with due care as to the interests of the intended beneficiary." *Heyer,* at 229. It concluded that the attorney's conduct in that particular case did not meet the standard of care of a reasonably prudent attorney, and, therefore, plaintiffs had a cause of action. *Heyer,* at 229.

In Washington, the standard of care to which a lawyer is held in performing professional services is "'that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'" *Walker v. Bangs,* 92 Wn.2d 854, 859, 601 P.2d 1279 (1979) (quoting *Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 395, 438 P.2d 865 (1968)). In the present case, in order

to be entitled to relief for respondents' conduct, appellants would have to show a failure to conform to this standard of care. This they cannot do.

### BROCK'S CONDUCT WHEN THE WILL WAS DRAFTED

First, appellants contend that they are entitled to relief for Brock's conduct when he initially drafted the will. They argue that, considering that Brock knew that Schalock intended to leave his farm to them, Brock drafted the will too narrowly when he used the term "real property" to describe the bequest to them. Appellants contend that Brock owed them a duty to draft the will more broadly so that, in case Schalock sold the farm on a real estate contract and the nature of his interest thus changed to personal property, his interest in the contract would pass to them. They further contend that Brock was negligent in failing to advise Schalock of the effect of a change in the nature of the property at the time he executed the will.

We do not believe Brock failed to exercise the care, skill, diligence and knowledge of a reasonable, prudent lawyer practicing in Washington when he drafted the will. Schalock asked Brock to prepare his will so as to leave all of his real property to appellants, and that is precisely what Brock did. Assuming that appellants could prove their allegation that Brock knew that Schalock intended to pass the principal asset of his estate, the Lincoln County farm, to them, Brock still acted reasonably in drafting the will as he did. Given all the circumstances, it is inconceivable that, at the time Schalock asked Brock to draft the will, he informed Brock that he intended to sell the farm after executing his will. Thus, unlike the attorney in *Heyer v. Flaig*, 70 Cal. 2d 223, 449 P.2d 161, 74 Cal. Rptr. 225 (1969), Brock had no notice when he drafted the will that Schalock planned to take any action after executing the will that might affect the testamentary distribution of his property. In the absence of such an indication, no reasonable lawyer would be expected to foresee at the time the will was drafted that Schalock might sell the farm on a real estate

contract, and that such a sale might affect his testamentary distribution. Given that Brock could not be expected to anticipate these events, it would be unreasonable to require him either to draft the will to provide for them, or to advise Schalock of their possible effects. Therefore, appellants have not stated a claim for which relief could be granted with regard to Brock's conduct at the time the will was drafted.

### Brock's Conduct When the Real Estate Contract Was Drafted

Appellants further contend that, at the time Carpenter was drafting the real estate contract for Schalock, Brock was negligent in failing to advise Schalock that the sale on the contract could change the nature of the property and affect his estate plan. According to appellants' own assertions, Brock did not notice that Carpenter was preparing the real estate contract and was not aware that the property was being sold. Appellants suggest, however, that because the firm's lawyers received memos on new matters being handled in the firm, Brock should have known that the farm was being sold on a real estate contract and, therefore, he had a duty to advise Schalock of the contract's possible effect on his testamentary distribution.

If we held that Brock had such a duty, we would be expanding the obligation of a lawyer who drafts a will beyond reasonable limits. When an individual retains an attorney to draft his will, the attorney's obligation is to use the care, skill, diligence and knowledge that a reasonable, prudent lawyer would exercise in order to draft the will according to the testator's wishes. Once that duty is accomplished, the attorney has no continuing obligation to monitor the testator's management of his property to ensure that the scheme originally established in the will is maintained. The time and expense that would be required for the attorney to follow all of the testator's activities with respect to his property would prevent the attorney from being able to provide reliable and economical services to

that client, and would constitute an overwhelming burden on the attorney's practice as a whole. We conclude, therefore, that Brock had no duty to advise Schalock when the real estate contract was drafted of its effect on his testamentary distribution.

## CARPENTER'S CONDUCT

Finally, we must consider appellants' allegations as to Carpenter's conduct. Appellants contend that when Carpenter drafted the real estate contract, he was negligent in failing to inform Schalock that the sale of the property on a contract could change the nature of the property and affect his plans for the disposition of his estate.

■ Appellants acknowledge that in order for Carpenter to have such a duty, he would have to be imputed with knowledge of the contents of Schalock's will. We believe that it would be unreasonable to impute such knowledge to Carpenter. To so hold would impose potentially staggering responsibilities on attorneys. An attorney would have to research every matter that attorney's firm had previously handled for the client, no matter how large the firm or how extensive the firm's prior work for the client. This would place an unreasonable burden on the attorney and would markedly increase the cost of providing legal services.

If Carpenter had no knowledge of the contents of Schalock's will, then it follows that Carpenter had no duty to advise Schalock that the sale of his property on the real estate contract could affect the disposition of his estate. Because he did not know the terms of the will, Carpenter cannot be expected to have recognized the possibility that the sale could have any impact on Schalock's estate plan.

■ If Carpenter had no such duty to Schalock, he certainly could not have owed a similar duty to appellants. There cannot be a greater duty between an attorney and third persons affected by the attorney–client agreement than there is between the attorney and the client.

Furthermore, no such duty to appellants could arise under the multi–factor balancing test or the third party

beneficiary theory. Because Carpenter had no reason to know the contents of Schalock's will, he could not have foreseen that the sale on the real estate contract might harm appellants. In addition, appellants could not have been intended to benefit from the attorney–client relationship between Carpenter and Schalock, because the sale on the real estate contract had no conceivable benefit to them.

We conclude that Carpenter had no duty to appellants to inform Schalock that the sale of his farm on the real estate contract could affect his testamentary distribution. Therefore, appellants are not entitled to relief for their claims regarding Carpenter's conduct.

In summary, we hold that appellants are unable to prove any facts which would entitle them to relief for any of respondents' conduct in handling the testator's affairs. We affirm the trial court's dismissal of this action for failure to state a claim upon which relief may be granted.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and CALLOW, JJ., concur.

PEARSON, C.J., concurs in the result.

GOODLOE, J. (dissenting)—I dissent because I believe appellants have stated a sufficient cause of action to survive a dismissal motion under CR 12(b)(6). Appellants' allegations, as presumed to be true for purposes of a CR 12(b)(6) motion, state a viable claim for legal malpractice.

The majority correctly acknowledges that most other jurisdictions have held that an attorney who drafts a will for a client owes a duty of care to the beneficiaries of the will. *See, e.g., Heyer v. Flaig,* 70 Cal. 2d 223, 449 P.2d 161, 74 Cal. Rptr. 225 (1969); *Lucas v. Hamm,* 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), *cert. denied,* 368 U.S. 987 (1962); *Fickett v. Superior Court,* 27 Ariz. App. 793, 558 P.2d 988 (1976); *Ogle v. Fuiten,* 102 Ill. 2d 356, 466 N.E.2d 224 (1984); *McAbee v. Edwards,* 340 So. 2d 1167 (Fla. Dist. Ct. App. 1976); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983); *Stowe v. Smith,* 184 Conn. 194, 441

A.2d 81 (1981); *see also Bowman v. John Doe,* 104 Wn.2d 181, 186–88, 704 P.2d 140 (1985); R. Mallen & V. Levit, *Legal Malpractice* § 80 (2d. ed. 1981). Yet without denying the existence of such a duty here, the majority goes on to dispose of this case by holding that the respondent attorneys were not negligent as a matter of law because their conduct satisfied the applicable standard of care. *See, e.g., Walker v. Bangs,* 92 Wn.2d 854, 859, 601 P.2d 1279 (1979). In so holding, the majority usurps the jury's function. Once we determine that an attorney owed a duty to a particular plaintiff, it should be left to the jury to decide whether the standard of care was violated. *See Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 396, 438 P.2d 865 (1968).

Appellants here allege that the respondent law firm, which holds itself out as an estate planning firm and had been providing services for many years to Ralph Schalock, violated the professional standard of care when its attorneys failed to draft Schalock's will to comport with his intentions and further failed to properly advise Schalock of the effect of a subsequent land sale upon the disposition of his estate. I believe these allegations state a cause of action upon which relief could be granted. First, appellants' allegations state a claim for negligence on the part of Norman Brock in the initial will drafting. The majority holds there can be no negligence here since Brock drafted the will to conform precisely to Schalock's intent that all of his real property be left to appellants. Yet, this ignores appellants' argument, consistent with the language in their amended complaint, that Schalock's intent was to pass to appellants the principal asset of his estate, which happened to be the farm at the time the will was drafted, *regardless of what form that asset eventually took.* Because the will as drafted by Brock passed only Schalock's "real property" to appellants, it was not consistent with this intent.

The majority reasons that it is unreasonable to expect Brock to have foreseen at the time he drafted the will that Schalock might eventually sell the farm on a real estate contract. However, a reasonably prudent lawyer, knowing

that his client wanted to devise to certain beneficiaries the principal asset of his estate, in whatever form it existed, would not have narrowly designated the asset to be devised as "real property". Appellants' allegations, if proven true, could plausibly lead a jury to find that Brock's drafting of the will did not conform with the duty owed to appellants.

In addition, I would hold that appellants' allegations state a claim for negligence on the part of both Brock and Kenneth Carpenter for failing to advise Schalock of the effect of the real property sale on his estate plan. The majority determines that it would be unreasonable to impute to Brock knowledge of the real estate contract subsequently prepared by Carpenter or to impute to Carpenter knowledge of the will. I believe the majority perceives this issue too narrowly. Appellants assert that the firm's lawyers routinely received memos on new matters being handled in the firm. This suggests that Brock and Carpenter had not only imputed, but also *actual* knowledge of each other's respective legal matters. If these assertions are proven true, appellants could conceivably establish that Brock and/or Carpenter violated the standard of care by failing to advise Schalock of the potential effect of the real property sale on the disposition of his estate.

Further, even if appellants cannot prove that Carpenter had actual knowledge of Schalock's will, a jury could reasonably find that Carpenter violated the standard of care by failing to inquire about the potential effect of the real estate contract on Schalock's estate plan. The majority rejects this theory, reasoning that an attorney has no duty to inquire beyond those matters directly presented by the client. However, whether an attorney is negligent in failing to make certain inquiries ordinarily requires a factual determination. *Hansen v. Wightman,* 14 Wn. App. 78, 87, 538 P.2d 1238 (1975). In this instance, it should be left to the trier of fact to determine whether a duty to inquire existed. *I believe a trier of fact could logically determine,* based on the facts alleged, that when a member of a law firm which specializes in estate planning is involved in the

sale of the only real property of value of a long–time client, that attorney has a duty to inquire about the potential distribution of that property.

Finally, I would hold that appellants' allegations state a claim for negligence on the part of the respondent law firm, viewed as a separate entity. Appellants' allegations suggest that Schalock's relationship with Brock and Carpenter could be viewed as part of a broader agreement with their law firm as a whole to provide him with general legal services, including the drafting of his will. If such an agreement were shown to exist, then appellants could probably establish that the law firm had breached *its duty of care* by failing to provide a will that conformed to Schalock's intentions. Under this theory as well, I believe that appellants have stated a cause of action sufficient to withstand dismissal pursuant to CR 12(b)(6).

I do not share the majority's concerns that permitting a cause of action here would lead to unlimited liability for attorneys and their law firms or impose an unreasonable burden on law practice. Nor would allowing a cause of action impose a duty on attorneys to monitor all future transactions or research all past transactions handled for a client by other members of the law firm. The attorney's duty would remain the same: to use "'that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'" *Walker,* at 859 (quoting *Cook,* at 395). Whether that *standard of care was* violated in any instance would remain a question for the trier of fact. *See Cook,* at 396. Naturally, in some circumstances it would be unreasonable to hold that an attorney has a duty to inquire beyond those matters directly presented by the client. Yet this is not always the case. A client may ask a lawyer for assistance in drafting a real estate contract not only to use the lawyer's expertise in drafting, but also to benefit from the lawyer's expertise in recognizing potential ramifications of the contract on his or her other legal affairs. Because agreements to perform legal

services are multifaceted and varied, the scope of the lawyer's duty cannot be stated in the abstract. Rather, it is a reasonableness question that must depend in part upon the actual circumstances under which the lawyer has undertaken to perform services for the client. *See Heyer,* at 229. In my opinion, permitting the trier of fact to determine, in accordance with established law, whether an attorney's performance is negligent will not result in the expansion of legal malpractice liability to unwarranted extremes.

Not only are the majority's concerns ill founded, but also its remedy is ill suited to modern times. As solo practice increasingly gives way to large multipurpose law firms, clients are facing less and less control over who their attorneys will be. An individual who seeks services of a law firm today may not have much choice as to which attorneys in the firm will ultimately handle his or her particular affairs; such individual must understandably rely on the firm attorneys collectively to look after his or her interests. In such situations, the client would reasonably expect that the firm attorneys would consider the effect of their individual transactions on the client's general interests. At the very least, the client would expect that the firm attorneys would communicate with one another so that reasonable service is provided.

In its well intended desire to shield the legal profession from undue expansions in malpractice liability, the majority inappropriately nullifies an entire category of potentially valid claims. I would reverse the trial court and remand for a determination by the trier of fact as to whether each of the respondents individually and/or through their law firm violated the standard of care owed to appellants as intended beneficiaries of Schalock's will.