[Nos. 45250-2-II; 45590-1-II.   Division Two.   September 22, 2015.]

JENNIFER LINTH ET AL., *Appellants*, v. CARL GAY ET AL., *Respondents*.

*Thomas E. Seguine* (of *Law Office of Tom Seguine*); and *Linda B. Clapham* (of *Carney Badley Spellman PS*), for appellants.

*Christopher W. Keay* and *Michael B. McDermott* (of *Johnson Graffe Keay Moniz & Wick LLP*), for respondents.

¶1 LEE, J. — This litigation involves a legal malpractice action arising from a dispute over an amendment to the Evelyn Plant Testamentary Trust (the Trust). Carl Gay was hired to draft the Trust and the First Amendment (Amendment) to the Trust. After Plant's death, beneficiaries of the Trust challenged the validity of the Amendment.

¶2 In 2009, Jennifer Linth, in her individual capacity as a beneficiary, brought a legal malpractice suit against Gay.

In 2011, Linth formed the Franklin and Evelyn Plant Green Point Foundation (the Foundation). In 2011, the Trust and the Foundation moved to intervene in Linth's suit.

¶3 Gay moved for summary judgment against Linth, arguing that he did not owe her a duty as a nonclient beneficiary, and the superior court granted Gay's motion for summary judgment. Gay then moved for summary judgment against the Trust and the Foundation, arguing that the statute of limitations had expired, and the superior court also granted this motion.

¶4 In the published part of this opinion, we hold that Gay did not owe Linth a duty as a nonclient beneficiary. In the unpublished portion of this opinion, we hold that the statute of limitations has expired for the Trust's and the Foundation's claims against Gay. Accordingly, we affirm the superior court's order granting Gay's motions for summary judgment and dismissing all claims against Gay.

## FACTS

¶5 Evelyn Plant owned and lived on property known as Green Point in Port Angeles, Washington. In July 2000, Plant retained Gay to create a living trust. On July 22, 2000, Plant signed the Trust, naming herself trustee.

¶6 In relevant part, the Trust provided a gift of $100,000 to Linth. It also provided that if the Green Point property was part of Plant's estate, then it was to be conveyed to Crista Ministries, Inc., subject to the condition that "[f]or a period of five (5) years commencing immediately upon [Plant's] death, [Linth] shall be entitled to an estate in the Green Point residence" and "[u]pon expiration of the five-year estate, [Linth] shall be entitled to a life estate in the northeast corner of the approximately sixty (60) acres." Clerk's Papers (CP) at 606-07.

¶7 In August 2000, Plant resigned as trustee and appointed Daniel W. Doran[1] as successor trustee. Gay remained counsel to Doran in his role as trustee.

¶8 Also in August 2000, Plant sought to amend the Trust. Gay drafted the Amendment.

¶9 On August 22, 2000, Doran took a draft of the Amendment from Gay's office and presented the draft to Plant, who signed it. The Amendment provided that if the Green Point property was part of Plant's estate, then it was to be conveyed, along with $50,000,

> to a nonprofit corporation and tax-exempt private foundation to be created by trustee in accordance with the terms set forth on the document entitled "THE FRANKLIN AND EVELYN PLANT GREEN POINT FOUNDATION PLAN" . . . a copy of which is attached hereto marked Exhibit 1 and by this reference incorporated herein as though set forth in full. The gift of cash and the Green Point residence to the Foundation shall be subject to the following:
>
> . . . [Linth] shall be entitled to occupy [Plant's] residence at Green Point, free of any costs, subject to the Foundation plan.

CP at 631-32. However, the referenced Foundation plan did not exist at the time Gay drafted the Amendment and exhibit 1 was not attached. The Amendment also removed Crista Ministries as a beneficiary.

¶10 Doran hired Linth's sister, Claudia Smith, to help create the Foundation in accordance with the Amendment and Plant's wishes. But before the Foundation was created, Plant died on January 1, 2001. In March 2001, Smith presented a Foundation plan to Doran and Gay. Doran and Gay did not believe that Smith's Foundation plan conformed to Plant's wishes, and Doran did not adopt Smith's plan.

¶11 Crista Ministries, a beneficiary under Plant's original Trust but not under the Amendment to the Trust,

---

[1] Doran is deceased and his estate is not involved in this appeal.

disputed the validity of the Amendment. Linth, who was entitled to a life estate to the entire Green Point property under the Amendment, as opposed to a life estate in only a portion of the Green Point property under the original Trust, sought to enforce the Amendment.

¶12 In 2001, Linth filed a Trust and Estate Dispute Resolution Act (TEDRA)[2] action for a declaration of rights under the Trust.[3] In 2003, Linth and Gay agreed to toll the statute of limitations for Linth's potential claims against Gay. In 2004, attorney S. Brooke Taylor began representing the trustee.

¶13 In 2005, Linth signed a Nonjudicial Dispute Resolution Agreement (NDRA) to resolve the TEDRA action.[4] As part of the NDRA, Doran resigned as trustee and personal representative.

¶14 In 2009, Linth, in her individual capacity as a beneficiary, filed a legal malpractice suit against Gay. Gay moved for summary judgment against Linth, arguing that he did not owe a duty to Linth because she was not his client. The superior court found that Gay did not have a duty to Linth as a nonclient beneficiary and granted Gay's motion. Linth appeals the superior court's order of summary judgment in favor of Gay.

## ANALYSIS

¶15 Linth argues that the superior court erred by granting Gay's motion for summary judgment because genuine issues of material fact exist about whether Gay owed her a duty as primary beneficiary of the Trust. We disagree.

---

[2] TEDRA provides that the superior court has jurisdiction over the administration of estates, and that it may administer and settle all matters relating to trusts. RCW 11.96A.010, .040(1), (3).

[3] Linth's 2001 petition is not at issue here.

[4] Linth has since moved to vacate the order approving the NDRA, which the superior court denied. In 2010, Linth filed a separate appeal in this court, which is currently pending after being stayed until 2014. *Evelyn M. Plant Tr. v. Linth*, No. 41285-3-II.

A. Legal Standard

■ ¶16 We review a superior court's order granting summary judgment de novo. *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC*, 180 Wn. App. 689, 698-99, 324 P.3d 743, *review denied*, 181 Wn.2d 1008 (2014). Further, we engage in the same inquiry as the superior court and our review is limited to the precise record before the superior court. RAP 9.12; *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 436, 333 P.3d 534 (2014). We resolve all factual disputes and reasonable inferences in favor of the nonmoving party. *Clark County Fire*, 180 Wn. App. at 698. "[I]ssues of law are not resolved in either party's favor, but are reviewed de novo." *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Clark County Fire*, 180 Wn. App. at 698.

■ ¶17 "[A] defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case" and (2) the plaintiff fails to demonstrate a genuine issue of fact on an element essential to the plaintiff's case. *Id.* at 699. "The nonmoving party may not rely on mere allegations, denials, opinions, or conclusory statements" to show a genuine issue of fact on an essential element. *Parks v. Fink*, 173 Wn. App. 366, 374, 293 P.3d 1275, *review denied*, 177 Wn.2d 1025 (2013). If the nonmoving party fails to demonstrate the existence of an essential element, then the court should grant summary judgment. *Wash. Fed. Sav. & Loan Ass'n v. McNaughton*, 181 Wn. App. 281, 297, 325 P.3d 383, *review denied*, 181 Wn.2d 1011 (2014). We may affirm on any grounds established by the pleadings and supported by the record. *Lane v. Skamania County*, 164 Wn. App. 490, 497, 265 P.3d 156 (2011).

■ ¶18 A legal malpractice claim requires:

"(1) [t]he existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the

client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred."

*Parks*, 173 Wn. App. at 376 (alteration in original) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)).

B. LINTH'S LEGAL MALPRACTICE CLAIM AGAINST GAY

¶19 Linth contends that Gay owed her a duty as beneficiary of the Trust. Specifically, Linth claims that Gay owed her a duty during two distinct periods. First, Linth claims that Gay owed her a duty before Plant's death, when he negligently prepared and executed Plant's estate planning documents, including the Trust and the Amendment to the Trust. Second, Linth claims that Gay owed her a duty after Plant's death, when he negligently represented Doran as personal representative and trustee. We disagree.

¶20 A threshold question in negligence claims is whether, as a matter of law, the defendant owed the plaintiff a duty of care. *Mita v. Guardsmark, LLC*, 182 Wn. App. 76, 83, 328 P.3d 962 (2014). Generally, only an attorney's client may bring an attorney malpractice claim. *Parks*, 173 Wn. App. at 377. However, in limited circumstances, an attorney may owe a nonclient a duty. *Id.* Whether an attorney owes a nonclient beneficiary a duty is a question of law. *Id.*

1. Negligence Before Plant's Death: Preparation of Estate Planning Documents

¶21 Linth claims that Gay negligently failed to competently draft Plant's estate and trust plans by failing to include the missing attachment to the Amendment to the Trust before Plant died. The question here is whether Gay, as Plant's estate attorney, owed Linth, as a beneficiary, a duty to properly execute the Trust documents, including a duty to ensure that the Amendment was complete.

¶22 Division One of our court addressed an issue similar to the one here and held that an attorney does not owe a duty of care to the prospective beneficiary of a client's estate to promptly execute a will. *Id.* at 368. In *Parks*, the testator, without witnesses or a notary, signed a draft of a second will, which designated the plaintiff as a beneficiary. *Id.* at 369. The attorney did not promptly obtain two witnesses for the testator's signature as required by statute for a valid will. *Id.* at 370. When the attorney finally attempted to have the testator properly execute the second will, the testator was physically unable to do so. *Id.* at 369-70. In the probate proceedings, the plaintiff submitted declarations stating that the testator wanted the plaintiff to be the primary beneficiary of his estate. *Id.* at 371-73. Ultimately, the original will, with no provisions for the plaintiff, was administered over the plaintiff's objections. *Id.* at 373. The plaintiff brought a legal malpractice action against the attorney who prepared the will, arguing that the attorney owed him a duty to promptly execute the second will that named him beneficiary. *Id.* at 367-68. The plaintiff argued that he was deprived of his entitlement to the testator's property because of the attorney's failure to properly execute the testator's will. *Id.* at 373. The *Parks* court held that to impose a duty to prospective beneficiaries to promptly execute a will "would severely compromise the attorney's duty of undivided loyalty to the client and impose an untenable burden on the attorney-client relationship." *Id.* at 368. As the *Parks* court held:

> "[I]mposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen."

*Id.* at 387-88 (alteration in original) (quoting *Krawczyk v. Stingle*, 208 Conn. 239, 246-47, 543 A.2d 733 (1988)).

¶23 Linth argues that *Parks* does not apply here because *Parks* was concerned about compromising the attorney's loyalty to the client. Linth claims that there was no need for Gay to be concerned about encouraging or influencing Plant because "by *every* account, she was deeply loved by [Plant] for many different reasons." Br. of Appellant (Linth) at 24. However,

> "[w]hereas a testator and the beneficiary of a will have a mutual interest in ensuring that an attorney drafts the will non-negligently, a prospective beneficiary may be interested in the will's prompt execution, while the testator or testatrix may be interested in having sufficient time to consider and understand his or her estate planning options."

*Parks*, 173 Wn. App. at 388 (quoting *Sisson v. Jankowski*, 148 N.H. 503, 509, 809 A.2d 1265 (2002)). Linth fails to explain, or offer authority for, her assertion that *Parks* does not apply because Plant wanted to provide for her.

¶24 The circumstances here closely parallel those in *Parks*.[5] Here, as in *Parks*, the Trust documents were not properly executed before Plant's death. Further, like *Parks*, there is evidence that Plant wanted to provide a life estate for Linth. Because *Parks* controls, we hold that Gay did not owe a duty to Linth, a nonclient beneficiary.[6]

¶25 Linth relies on *In re Guardianship of Karan*, 110 Wn. App. 76, 38 P.3d 396 (2002), to support her claim that

---

[5] Linth asserts that *Parks* is inapplicable because it dealt with a prospective beneficiary and she is an actual beneficiary. She provides no authority to support her assertion that the distinction is consequential. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Therefore, we do not consider this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[6] Linth also asserts, without authority, that the cases cited by Gay discuss the "duty in the context of estate planning generally" but "do not apply to this estate planning setting, which involves the establishment first of an inter vivos irrevocable trust with testamentary provisions" and "where an amendment—whether effective or not—increased the gift to the beneficiary." Br. of Appellant (Linth) at 18. Because her assertions are not supported by authority, we do not address them. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

Gay owed her a duty despite the absence of an attorney-client relationship. However, *Karan* is factually and legally distinguishable from the present case.

¶26 In *Karan*, a three-year-old child's mother hired an attorney to establish a guardianship for her child's estate, which consisted of the child's father's life insurance proceeds. *Id.* at 79. The mother eventually depleted the estate. *Id.* The guardian of the child brought a legal malpractice claim against the mother's attorney, claiming that he failed to comply with the guardianship statute requirements. *Id.* at 79-80. The superior court granted the attorney-defendant's motion for summary judgment, finding that the defendant did not owe a duty of care to the nonclient beneficiary of the guardianship. *Id.* at 80.

¶27 Division Three of this court reversed, finding that under the unique circumstances of guardianship, the attorney owed a duty to the child. *Id.* at 79. The court in *Karan* held that while the court is concerned that imposing a duty to nonclient beneficiaries could "create an impossible ethical conflict for lawyers" because beneficiaries and the personal representative of an estate are often in an adversarial relationship, those concerns were inapplicable in the context of a guardianship. *Id.* at 86. The court held that "[t]he obligation to protect the interests of wards in a circumstance such as this does not put lawyers in an ethical bind." *Id.* The *Karan* court noted that the circumstances before it—"a legally incompetent infant ward" in a nonadversarial relationship—were factually distinguishable from the situation involving two competent adults. *Id.* at 84.

¶28 The policy concerns present in *Karan* are not present here because Linth and Plant were competent adults. *Id.* Accordingly, *Karan*'s rationale is inapplicable.

## 2. Negligence After Plant's Death: Representation of the Personal Representative and Trustee

¶29 Linth claims that Gay negligently represented Doran, as the personal representative and trustee, after Plant's death.[7] Linth apparently claims that Gay's duty to Doran included a duty to her as a nonclient beneficiary. We hold that Gay's duty to Doran, as personal representative and trustee, did not include a duty to Linth, a nonclient beneficiary.

¶30 In *Trask v. Butler*, the court held that "a duty is not owed from an attorney hired by the personal representative of an estate to the estate or to the estate beneficiaries." 123 Wn.2d 835, 845, 872 P.2d 1080 (1994). The plaintiff in *Trask* was the successor personal representative and a beneficiary of his parents' estate. *Id.* at 839. The plaintiff brought a legal malpractice claim, on his own behalf as a beneficiary, against the former personal representative's attorney, alleging that the attorney negligently advised the former personal representative. The *Trask* court noted:

> In *Stangland v. Brock*, 109 Wn.2d 675, 747 P.2d 464 (1987), we acknowledged the right of an estate beneficiary to bring a cause of action against an attorney under the multifactor balancing test . . . . In finding a duty to beneficiaries under the multifactor balancing test, we recognized "if the beneficiaries could not recover for the attorney's alleged negligence, no one could." *Stangland*, at 681. This rationale is inapplicable to the facts in this case since estate beneficiaries have two preexisting legal procedures to protect their interest in the estate. Foremost, the personal representative owes the beneficiaries of an estate a fiduciary duty to act in the estate's best interest. If the personal representative's conduct falls below this standard, the estate beneficiaries may bring a cause of action against the personal representative for breach of fiduciary duty. By directing estate beneficiaries to file suit against the personal repre-

---

[7] Linth's discussion of this claim contains no citation to authority or to the record.

sentative for breach of fiduciary duty, we properly place the emphasis of estate decisionmaking upon the correct individual — the personal representative.

*Id.* at 843 (most citations omitted).

¶31  Here, Linth has alternative methods to address her claims—methods that she has utilized. She can bring, and has brought, a complaint against the trustee and personal representative of the estate. Accordingly, the concerns expressed in *Stangland* and noted in *Trask* do not apply in this case.

¶32  In the absence of any authority that Gay owed her a duty or that *Trask* does not control this issue, Linth has not met her burden to establish that Gay owed her a duty as a nonclient beneficiary. Thus, because Linth has not met her burden to establish that Gay owed her a duty as a nonclient beneficiary, summary judgment in favor of Gay was appropriate.

¶33  A majority of the panel having determined that only the foregoing portion of the opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK and MAXA, JJ., concur.

Review denied at 185 Wn.2d 1012 (2016).