2016 DEC 27 9: 43

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JULIE REZNICK, a married woman on behalf of her separate estate; and CAROL LORENZEN, and unmarried woman, | No. 74607-3-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| LIVENGOOD, ALSKOG, PLLC, a professional limited liability company f/k/a LIVENGOOD, FITZGERALD & ALSKOG PLLC; and HUGH W. JUDD and JANE DOE JUDD, | |
| Respondents. | FILED: December 27, 2016 |

APPELWICK, J. — A testator's sisters assert a malpractice claim against the testator's estate planning attorney. The sisters claim they were owed a duty as intended beneficiaries of the attorney's services. Counsel argued that he owed no duty to the sisters because they were not his clients, but merely intended beneficiaries under the will. The trial court dismissed on summary judgment. Under the applicable multifactor test, even assuming the sisters were intended beneficiaries of the attorney's services, counsel owed them no duty. We affirm.

## FACTS

Hugh Judd was testator Ellen Lorenzen's longtime estate planning attorney. Ellen[1] was diagnosed with cancer in the 1990s. Judd assisted Ellen in creating a will in 2005. That will split Ellen's residuary between two nonfamily members. That will also gave a $10,000 gift to each of Ellen's two sisters, Carol Lorenzen and Julie Reznick.

Ellen's condition began rapidly deteriorating in 2012. On February 16, 2012, Carol e-mailed Judd. She told him that Ellen was not well and that Ellen wanted to speak with Judd about her will. Judd telephoned Ellen at the hospital that night. During their conversation, Judd specifically asked if Ellen wanted to revise the 2005 will so that her sisters would receive greater portions of her estate. Ellen responded that she would have to think about it. They planned to meet in person the next week to discuss.

When Judd arrived to meet with Ellen, a nurse informed him that she had only hours left to live. Ellen's sister Julie and her longtime neighbor, Anne Nogatch, were present at that meeting. In their presence, Judd asked Ellen to squeeze his hand if she wanted to revoke her 2005 will so that her sisters would split her entire estate through intestate succession. Ellen squeezed Judd's hand.

---

[1] We use first names for the purposes of clarity. We intend no disrespect.

Judd was unaware that, under Washington law, he could not destroy Ellen's will outside of Ellen's presence.[2] Ellen died that afternoon, and Judd had not yet destroyed the will. Her prior will was therefore still in force.

Ellen's sisters sued Judd for legal malpractice. The trial court granted Judd's motion for summary judgment.

## DISCUSSION

Appellate courts review summary judgment orders de novo. Owen v. Burlington N. & Santa Fe R.R.., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Clark v. Baines, 150 Wn.2d 905, 910-11, 84 P.3d 245 (2004). Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Van Noy v. State Farm Mut. Auto Ins. Co., 142 Wn.2d 784, 790, 16 P.3d 574 (2001).

The elements of a typical legal malpractice claim are (1) an attorney-client relationship, (2) the attorney's breach of the duty of care, (3) damage to the client, and (4) proximate causation between the attorney's breach and the damage incurred. Parks v. Fink, 173 Wn. App. 366, 376, 293 P.3d 1275 (2013). The trial court ruled that the sisters could not maintain a claim for malpractice against Judd because Judd owed them no duty.

In this case, the attorney-client relationship element is notably missing because the sisters were not Judd's client. However, in Trask v. Butler, 123 Wn.2d

---

[2] Under RCW 11.12.040(1) "A will, or any part thereof, can be revoked: . . . (b) By being burnt, torn, canceled, obliterated, or destroyed . . . by the testator or by another person in the presence and by the direction of the testator."

835, 842-43 972 P.2d 1080 (1994), our Supreme Court carved out an exception that allows plaintiffs to maintain legal malpractice claims even in the absence of an attorney-client relationship. In Trask, the Court held that an attorney hired by a personal representative does not owe estate beneficiaries a duty. Id. at 845. Trask sets out a six factor balancing test to determine whether a nonclient can maintain a malpractice action against an attorney. Id. at 842-43. Those factors are:

1. The extent to which the transaction was intended to benefit the plaintiff;
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury;
5. The policy of preventing future harm; and
6. The extent to which the profession would be unduly burdened by a finding of liability.

Id. The parties' arguments in this case focus on only the first, fifth, and sixth factors.[3]

We begin our analysis with the fifth and sixth Trask factors, because the resolution of those factors controls the outcome here. When the fifth and sixth factors are at issue, courts must weigh "the policy conflict between" them. See Parks, 173 Wn. App. at 378. This court thoroughly evaluated the policy considerations arising from factors five and six in Parks.[4] Id. at 378-87. In Parks, a testator hired an attorney to fix a drafting error misidentifying a beneficiary in a prior will that was drafted by a prior attorney. Id. at 368. But, the testator ultimately

---

[3] Even though Judd did not effectively revoke the old will, we assume for the moment that it was temporally possible to destroy it prior to Ellen's death. The trial court did not reach issues of causation and neither do we.

[4] Parks is the only Washington case that the parties cite to support their arguments on factors five and six.

did not execute the will prior to his death. Id. at 373. The nonclient plaintiff received nothing under the valid earlier will, but would have received a distribution from the estate had the client executed the subsequent will. Id. The nonclient sued the decedent's estate planning attorney, arguing that the attorney should have made a more timely effort to have the will executed. Id.

Whether the attorney owed a duty to the nonclient turned on the resolution of the fifth and sixth Trask factors.[5] Id. at 378. Regarding those factors, the court noted that "the majority of courts" addressing this issue have held that "an attorney owes no duty of care to an intended will beneficiary to have the will executed promptly." Id. The court was chiefly concerned that, if the attorney owed a duty to the nonclient, an attorney may be inclined to have a will hastily executed to benefit the nonclient without the testator " 'sufficiently reflecting upon their estate planning options.' " Id. at 388 (emphasis omitted) (quoting Sisson v. Jankowiski, 148 N.H. 503, 509, 809 A.2d 1265 (2002)). After a thorough discussion of the law in other jurisdictions, the court determined that this "risk of interfering with the attorney's duty of undivided loyalty to the client exceeds the risk of harm to the prospective beneficiary." Id. at 389. And, recognizing a duty could create an "irreconcilable conflict of interest" that could compromise the "undeviating fidelity of the lawyer to his client." Id. at 388. The court therefore declined to recognize a duty under those facts. Id. at 389.

---

[5] The first factor, whether Parks was an intended beneficiary of counsel's services, was not before the court, but was assumed for purposes of the decision. Parks, 173 Wn. App. at 378. We make the same assumption for purposes of applying the fifth and sixth Trask factors.

The court also addressed a possible policy counterargument: that absent a duty to the beneficiaries, no party could hold the attorney liable for his or her negligence. Id. at 388. In response, the court reasoned that:

> "[j]ust as it would not do to award damages to a randomly selected bystander simply to bring home a message that the defendant and others like him or her should not be careless, so it would not do to make such an award, even to a rationally selected plaintiff, if in the circumstances the objective of deterrence is outweighed by countervailing policy considerations."

Id. at 388 n.13.

The sisters argue that Parks should not control because the plaintiffs in Parks argued that the attorney failed to act promptly, but here the attorney failed to correctly advise. They assert that Parks' policy concerns about compromising loyalty to a client are therefore inapplicable.

But, the negligence that the sisters allege caused them damage was in the attorney's failure to effectuate Ellen's wishes. To effectuate Ellen's wishes Judd needed to ensure the will was properly destroyed prior to her death. That failure was the act of the alleged negligence. His mistaken belief that he could lawfully destroy the will after her death was merely the reason for that failure. Had Judd instead forgotten to tend to the lawful destruction of the will, the failure would have been the same.

Parks involved the alleged failure to see that a new testamentary plan was implemented by failing to see the replacement will executed. Id., at 373. This case involves the failure to see the new testamentary plan implemented by failing to see that the old will was timely destroyed. In both this case and Parks, the plaintiff's

relationship to the attorney is the same: they are intended beneficiaries of the testator's estate, not clients. The reasoning in Parks is equally persuasive here. Its holding controls. Even reviewing the facts in the light most favorable to Ellen's sisters, Judd owed them no duty.

The sisters also argue that Stangland v. Brock, 109 Wn.2d 675, 747 P.2d 464 (1987) requires us to rule in their favor. In Stangland, the Supreme Court addressed a nonclient's claim for malpractice when an attorney failed to advise a testator that a real estate transaction would affect the nonclient's estate distribution. Id. at 677-78. The Court briefly discussed duty: "beneficiaries of [a] will are intended to benefit from the relationship between the testator and the attorney drafting the will, because an integral purpose of drafting the will is to provide for the beneficiaries." Id. at 681.

But, the sisters' reliance on Stangland is unpersuasive. First, Stangland predated Trask, and it therefore did not specifically analyze the framework as announced by our Supreme Court in Trask. Stangland, 109 Wn.2d at 675; Trask, 123 Wn.2d at 835. Second, the Stangland Court ruled that the nonclient estate beneficiaries could not sustain a claim. Stangland, 109 Wn.2d at 685-86. We therefore do not see how Stangland requires us to find that the sisters can sustain a claim here. Third, Stangland addressed intended beneficiary status of the plaintiffs, but it did not meaningfully analyze the policy concerns under the fifth and sixth Trask factors that guide our analysis here. Stangland 109 Wn.2d at 681-82.

We hold that Parks controls. Trask factors five and six dictate that Judd owed Reznick and Lorenzen no duty, even if they were intended beneficiaries of

7

his testamentary planning services to their sister, not merely intended beneficiaries of the estate plan.

We affirm.

WE CONCUR: