[No. 46041-2-I.   Division One.   December 11, 2000.]

ANDREW P. DAVIS, ET AL., *Appellants*, v. DAVIS WRIGHT TREMAINE, L.L.P., ET AL., *Respondents*.

*Christopher C. Pence* (of *Pence & Dawson*) and *Charles K. Wiggins* (of *Wiggins Law Offices, P.L.L.C.*), for appellants.

*Karl F. Oles* (of *Danielson Harrigan & Tollefson*), for respondents.

Cox, J. — Does the six-year statute of limitations for written contracts[1] apply to this legal malpractice action because of language in the letter of engagement between Dr. Andrew Davis and Davis Wright Tremaine L.L.P. (DWT)? If the six-year statute does not apply, are there genuine issues of material fact as to the time of accrual of Dr. Davis' cause of action under the three-year statute of limitations for negligence?[2]

We hold that the legal malpractice claim here is not an action "upon a contract in writing" within the six-year statute. Moreover, it is not an action upon "a liability express or implied arising out of a written agreement" within that same statute. Accordingly, we affirm the trial court's conclusion that the six-year statute does not apply.

There are genuine issues of material fact as to the time of accrual of the legal malpractice claim based on the alleged professional negligence of DWT in failing to determine, prior to closing, whether there were title defects to the realty in which Dr. Davis acquired an interest. Accordingly, we reverse that portion of the trial court's decision, and remand for further proceedings.

In January 1992, Dr. Davis retained A. Peter Parsons of DWT to represent him in the purchase of Dr. Herschell Boyd's ophthalmology practice. Parsons memorialized the terms and conditions of the representation in a letter of engagement that he sent to Dr. Davis. The letter stated, in part, that "we will do our best to provide you with prompt, high quality legal counsel." Enclosed with the letter was a

---

[1] RCW 4.16.040(1).

[2] RCW 4.16.080(2).

document titled "Standard Terms of Engagement for Legal Services" (Standard Terms), which DWT commonly uses. It stated that "[w]e will at all times act on your behalf to the best of our ability."

In April 1992, Dr. Davis agreed to purchase Dr. Boyd's practice.[3] At closing, the parties executed five separate documents to effectuate the purchase agreement. They included an asset sale agreement, an employment agreement and covenant not to compete, a security agreement, an option agreement, and a lease.[4] The employment agreement provided that Dr. Davis would retain Dr. Boyd as an employee of the practice for three years to facilitate the transfer of patients.[5] The lease provided for Dr. Davis' professional corporation to lease a portion of a three-story building owned by Dr. Boyd for the purpose of providing ophthamological services. The option permitted Dr. Davis, during the term of the lease, to exercise the option to purchase the entire building.

In September 1992, Dr. Davis learned that Dr. Boyd was the subject of formal charges by the state Medical Disciplinary Board. As a result, he had lost his hospital privileges and malpractice insurance coverage. Dr. Davis retained the law firm of Bogle & Gates to represent him in the legal proceedings that followed.

In February 1993, Dr. Davis and Dr. Boyd began arbitration proceedings that culminated in a decision by the arbitrator that the employment agreement was null and void. The arbitrator also ruled that the remaining agreements were enforceable.[6]

When Dr. Davis moved to confirm the award in King County Superior Court, a judge vacated the award, holding that the parties had entered into a single agreement that was not severable. Dr. Davis appealed, and we reversed,

---

[3] *Boyd v. Davis*, 127 Wn.2d 256, 258, 897 P.2d 1239 (1995).

[4] *Boyd*, 127 Wn.2d at 258.

[5] *Boyd*, 127 Wn.2d at 258.

[6] *Boyd*, 127 Wn.2d at 259.

reinstating the arbitrator's award.[7] In July 1995, our Supreme Court affirmed our decision.[8]

In June 1993, Bogle & Gates wrote Perkins Coie, then counsel for Dr. Boyd. In its letter, Bogle stated that a recent title search of the building Dr. Davis leased indicated that title was vested in a foreign entity, not Dr. Boyd. Expressing concern that this discovery called into question whether Dr. Davis was paying rent to the correct entity and whether his 1992 option to purchase the building from Dr. Boyd was valid, Bogle sought an explanation. The reply from Perkins indicated that Dr. Boyd held sufficient rights to honor his obligation under the option, and that Dr. Davis should continue to pay rent to Dr. Boyd.

In early 1995, Dr. Davis retained new counsel to sue Parsons and DWT for legal malpractice. Dr. Davis and DWT agreed to toll the three-year statute of limitations to April 30, 1996, to permit further investigation of the potential claims.[9]

In the fall of 1995, Dr. Boyd fled the country. Dr. Davis claims that it was around this time that he first learned that Dr. Boyd did not own the building at the time of the closing of the sale of the practice in May 1992.

In September 1997, Dr. Davis commenced this action against Parsons and DWT. The amended complaint alleges that "defendants breached their contract with [Dr. Davis]." It also alleges that "defendants breached their duties of care to [Dr. Davis] and were negligent." Dr. Davis seeks unspecified monetary damages for "physical and emotional injuries and monetary losses," past and future.

DWT counterclaimed for over $52,000 in unpaid legal

---

[7] *Boyd v. Davis*, 75 Wn. App. 23, 876 P.2d 478 (1994), *aff'd*, 127 Wn.2d 256 (1995).

[8] *Boyd*, 127 Wn.2d at 263.

[9] We note that Dr. Davis' trial counsel appears to have assumed that the three-year statute of limitations applied to this malpractice action. In his April 26, 1995 letter to DWT seeking a tolling agreement, he stated, *"[c]laims of lawyer negligence in Washington are governed by a three year statute of limitations and discovery rule."* (Emphasis added.) Clerk's Papers at 41.

fees. The fee claim was based on the parties' January 1992 letter of engagement.

DWT moved for summary judgment, arguing that Dr. Davis' legal malpractice claims "sound in tort," not contract. According to DWT, the tort claims were barred by the three-year statute of limitations.

The trial court agreed with DWT's arguments, and granted the motion. The court also certified its order as final pursuant to CR 54(b). DWT's counterclaim for unpaid fees is still pending below.

Dr. Davis appeals.

## Six-Year Limitations Statute

The threshold question is whether the six-year or the three-year statute of limitations applies to these largely undisputed facts. We first consider the six-year statute. If that statute does not apply, we must then consider whether under the three-year statute, genuine issues of material fact exist.

■ We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[10] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[11] We review questions of law de novo.[12]

The trial court granted summary judgment, holding that the malpractice claims "sound in tort" and thus are governed by the three-year statute of limitations. Because Dr. Davis failed to commence this lawsuit within that period, the trial court held that all claims are barred. On appeal, Dr. Davis claims that the trial court's reasoning and conclusion are flawed. We agree with the trial court's conclu-

[10] CR 56(c).

[11] *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

[12] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

sion, but apply different reasoning to reach that result.

Neither party disputes the following relevant facts:

- January 1992: Dr. Davis retains DWT as his counsel. The letter of engagement and enclosed Standard Terms set forth the terms and conditions of their legal relationship.
- May 1992: Dr. Davis purchases Dr. Boyd's practice. As part of the transaction, Dr. Davis obtains an option to purchase the building and signs a lease.
- September 1992: Dr. Davis learns that the state Medical Disciplinary Board filed charges against Dr. Boyd earlier that year and prior to the closing of Dr. Davis' transaction. As a consequence, Dr. Boyd lost hospital privileges and malpractice insurance.
- January 1993: Dr. Davis writes DWT to complain of the firm's failure to perform "due diligence." He specifically refers to the firm's failure to discover the disciplinary actions filed against Dr. Boyd prior to closing.
- June 1993: Dr. Davis performs a title search and his counsel raises questions about title to the building. Dr. Boyd's then-counsel answers the questions.
- April 30, 1996: The tolling agreement between Dr. Davis and DWT expires.
- September 1997: Dr. Davis commences this action.

Dr. Davis first argues that his legal malpractice claims fall within the scope of RCW 4.16.040(1). More specifically, he contends that his action is based on DWT's breach of the terms of the January 1992 letter of engagement between the parties, and therefore the six-year statute of limitations for breach of contract actions applies. We hold that Dr. Davis' legal malpractice claim is not within the scope of this provision of the statute.

RCW 4.16.040 provides, in relevant part: "[t]he following actions shall be commenced within six years: (1) [a]n action upon a contract in writing, or liability express or implied

arising out of a written agreement."

Tracing a long line of Washington cases that characterize the nature of a legal malpractice claim, Dr. Davis forcefully argues that such actions are actions on a contract.[13]

He then correctly points out that in *Peters v. Simmons*,[14] our Supreme Court recognized that an attorney's breach of the standard of care with respect to a client's affairs may also give rise to a tort claim.

There, Peters sued his former attorney, claiming counsel negligently prepared a purchase agreement.[15] Former counsel raised as an affirmative defense that the action was barred by the three-year statute of limitations for oral contracts, RCW 4.16.080(3).[16] The trial court summarily dismissed the action based on the view that the claim accrued at the time of the lawyer's negligent act, which was more than three years before Peters filed suit.[17]

On appeal, Peters argued that the statute of limitations did not accrue until he discovered the facts giving rise to a cause of action for legal malpractice.[18] Significantly, Peters sought to apply a "discovery" rule to RCW 4.16.080(3), the three-year statute "upon a contract or liability, express or

---

[13] *Cornell v. Edsen*, 78 Wash. 662, 664-65, 139 P. 602 (1914) (holding that a legal malpractice action is based on breach of a duty growing out of a contractual relation where attorney dismissed client's action and concealed that fact); *Jones v. Gregory*, 125 Wash. 46, 49, 215 P. 63 (1923) (client's action against attorneys for damages arising from attorneys' negligent advice is subject to the three-year statute that governs actions upon express or implied oral contracts); *Smith v. Berkey*, 134 Wash. 348, 349, 235 P. 793 (1925) (action against attorney for failure to timely file summons and complaint is an action based on breach of contract that accrues at the time of the breach, not from the date of its discovery); *Schirmer v. Nethercutt*, 157 Wash. 172, 179-80, 288 P. 265 (1930) (stating that "[i]t is a closed question in this state . . . that [malpractice actions] are based on breach of contract.").

[14] 87 Wn.2d 400, 552 P.2d 1053 (1976).

[15] *Peters*, 87 Wn.2d at 402.

[16] *Peters*, 87 Wn.2d at 402.

[17] *Peters*, 87 Wn.2d at 402.

[18] *Peters*, 87 Wn.2d at 403-04.

implied, which is not in writing."[19] This is significant because the provision at issue in that case was the three-year statute applicable to oral contracts, not the six-year statute on written contracts or written agreements at issue here.

Our Supreme Court agreed with Peters' contention. It stated:

> During oral argument, [the defending attorney] agreed with the court that the failure of an attorney to properly perform legal services contracted for may constitute a breach of contract. The [defending attorney] also agreed that the failure to act as a reasonably prudent, diligent attorney in light of the standards of his or her profession may give rise to an action for negligence. The crux of [the defending attorney's] argument, then, is simply that the statute of limitations begins to run on the date of the alleged act of malpractice.
>
> This issue was last considered in *Busk v. Flanders*, 2 Wn. App. 526, 468 P.2d 695 (1970). The *Busk* case adhered to prior Washington law which had adopted the traditional view that a malpractice suit is based on a breach of contract and that the statute of limitations begins to run from the time of the breach and not from the date of its discovery.
>
> This rather narrow and mechanistic viewpoint appears to have been engendered in part by the fact that the relation between an attorney and client arises out of a contract. The analytical shortcoming of such a desire to categorize causes of action manifests itself most clearly in an action for legal malpractice. As conceded by [the defending attorney], *an action for legal malpractice may be framed conceptually either as a tort or a breach of contract. Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 491 P.2d 421, 98 Cal. Rptr. 837 (1971). The failure to exercise the requisite skill, care, and diligence necessary to the proper rendition of legal services may give rise to an action for breach of contract. Similarly, it may constitute a tort.[20]

(Some citations omitted) (emphasis added).

Our Supreme Court then held that "the statute of limi-

---

[19] *Peters*, 87 Wn.2d at 403-04.

[20] *Peters*, 87 Wn.2d at 404.

tations for legal malpractice should not start to run until the client discovers, or in the exercise of reasonable diligence should have discovered[,] the facts which give rise to his or her cause of action."[21] *Peters* has never been overruled. Moreover, subsequent cases continue to refer to malpractice actions in terms of contract.[22]

Relying heavily on *Peters*, Dr. Davis contends that case controls the disposition here. More specifically, he points to the statements in the letter of engagement and Standard Terms, arguing that they constitute a "contract in writing" that expressly and impliedly promised that DWT "would comply with the standard of care for attorneys practicing in [Washington] state."

Dr. Davis also attacks the trial court's reliance on the reasoning in *G.W. Construction Corp. v. Professional Service Industries, Inc.*,[23] In substance, that case held that the complaint of a fabricator of building parts against a professional company with which it contracted to inspect its work "sounded in tort," not contract. Thus, the action was barred by RCW 4.16.080(2), the three-year statute of limitations for torts.

We read *Peters* primarily as a case that applies the tort doctrine of "discovery" of a claim to the statute of limitations for *oral* contracts in a legal malpractice case. It holds that the time of accrual of an action on such a contract is when a client either discovers, or in the exercise of reasonable diligence should have discovered, the breach. While

---

[21] *Peters*, 87 Wn.2d at 406.

[22] *Stangland v. Brock*, 109 Wn.2d 675, 680-81, 747 P.2d 464 (1987) (contract theory of third-party beneficiary is a basis for establishing duty in a legal malpractice action between an attorney and a nonclient); *Hizey v. Carpenter*, 119 Wn.2d 251, 263-64, 830 P.2d 646 (1992) (stating that court's decision in rejecting use of violations of the Code of Professional Responsibility or Rules of Professional Conduct as evidence of legal malpractice is based on the fact that plaintiffs already have adequate common law theories under which to bring malpractice claims, citing *Peters* as an example of breach of implied contract claim); *French v. Gabriel*, 116 Wn.2d 584, 595, 806 P.2d 1234 (1991) ("[t]he statute of limitation period on attorney malpractice actions is 3 years," citing RCW 4.16.080(3), the statute of limitations for oral contracts).

[23] 70 Wn. App. 360, 853 P.2d 484 (1993), *review denied*, 123 Wn.2d 1002 (1994).

the case also acknowledges that a legal malpractice action may be framed either as a tort or breach of contract claim, nowhere does *Peters* address the six-year statute for written contracts that is at issue here.

The parties spend much of their briefs on appeal arguing whether this legal malpractice action "sounds in tort," as the trial court held, or is a contract action. *Peters* and subsequent cases make clear that characterizing a legal malpractice claim as one solely "sounding in tort" is analytically unsound. Our Supreme Court, beginning with that case, characterizes legal malpractice actions in both ways.[24]

Notwithstanding the dual nature of a legal malpractice claim, characterizing this case as an action "upon a contract," as Dr. Davis urges, is not dispositive. That is because an action "upon a contract" may be brought under either the six-year statute[25] or the three-year statute.[26] The relevant distinction between the two statutes is whether a qualifying writing is involved, not whether the action is "upon a contract."

More precisely, the narrow issue here is whether the Legislature intended that the claims here constitute an "action upon a contract *in writing*, or *liability express or implied arising out of a written agreement*" under RCW

---

[24] *See Bowman v. Doe*, 104 Wn.2d 181, 187, 704 P.2d 140 (1985) (Washington allows an action for legal malpractice to be framed either as a tort or a breach of contract); *Bohn v. Cody*, 119 Wn.2d 357, 367, 832 P.2d 71 (1992) ("[b]ecause a duty could still exist between [the defendant attorney] and [plaintiffs], the [plaintiffs'] contract and negligence causes of action were improperly dismissed").

[25] RCW 4.16.040 provides: "The following actions shall be commenced within six years:

"(1) An action *upon a contract* in writing, or liability express or implied arising out of a written agreement." (Emphasis added).

[26] RCW 4.16.080 provides: "The following actions shall be commenced within three years:

" . . . .

"(3) Except as provided in RCW 4.16.040(2), an action *upon a contract* or liability, express or implied, which is not in writing, and does not arise out of any written instrument . . . ." (Emphasis added).

4.16.040(1) (emphasis added).[27] With one exception that we discuss below, no reported case applies this statute to a legal malpractice action.

*Busk v. Flanders*[28] addresses the issue in dictum. There, Busk sued Flanders, his former attorney, for legal malpractice. The legal representation was based on an oral agreement between the two. After the alleged act of malpractice, but before the malpractice action, Flanders wrote Busk a letter offering to continue the legal representation on certain terms and conditions. When Busk commenced the malpractice action, Flanders raised the three-year statute of limitations as a defense. Busk argued that the six-year statute applied because of Flanders' letter and Busk's acceptance of the terms of that letter.

Our court held that the six-year statute did not apply because the malpractice claim arose not from the written contract, but from the oral one preceding it. The court also observed that the breach of contract must occur after the contract was made.[29] Because the breach occurred after the oral contract and before the written one, the appropriate statute to apply was that pertaining to oral contracts.

In dictum, this court went on to state that liability for legal malpractice is not a liability express or implied arising out of a written agreement unless the agreement guaranteed a specific result or assured the effect of legal services.[30] Here, there is no such guaranty of a specific result or assurance of the effect of legal services. Rather, in the letter of engagement on which Dr. Davis bases his action, DWT promises to use best efforts "to provide [Dr. Davis] with prompt, high quality legal counsel" and "to act on [Dr. Davis'] behalf to the best of [DWT's] ability." Likewise, the

---

[27] *See Caldwell v. Hurley*, 41 Wash. 296, 301-02, 83 P. 318 (1906) (noting that Legislature sets statute of limitations periods to encompass various classes of actions).

[28] 2 Wn. App. 526, 468 P.2d 695 (1970).

[29] *Busk*, 2 Wn. App. at 529-30.

[30] *Busk*, 2 Wn. App. at 530 (citing *Glens Falls Ins. Co. v. Reynolds*, 3 A.D.2d 686, 159 N.Y.S.2d 95 (1957)).

Standard Terms provided that "[w]e will at all times act on your behalf to the best of our ability."

■■ We need not decide in this case whether the above dictum in *Busk* marks the outer limits of a lawyer's liability for malpractice. That dictum does not conclusively answer the question that this case squarely presents. The question is whether the Legislature intended that the claims here constitute an "action upon a contract *in writing,* or *liability express or implied arising out of a written agreement*" under RCW 4.16.040(1) (emphasis added). To answer that question, we turn to our Supreme Court's holdings construing the statute in *Bicknell v. Garrett*[31] and *Halver v. Welle*.[32]

In *Bicknell*, the court faced the issue of whether the six-year statute applied to bar a claim against a Washington stockholder of a Michigan bank for superadded liability arising from a Michigan statute. The statute in question would have imposed liability for the bank's debt on its stockholders, notwithstanding the absence of any reference to such liability in the certificates of stock. Holding that there was no express contract in the stock certificate for the owner of the certificate to pay the superadded liability of the insolvent bank, the Supreme Court decided that the six-year statute did not apply. The court stated:

> [RCW 4.16.040(1)] provides the following limitation:
> "Within six years: . . .
> "2. An action upon a contract in writing, or liability express or implied arising out of a written agreement. . . ."
>
> We are inclined to the opinion that this statute does not contemplate quasi-contracts or liabilities merely contractual in nature, but liabilities which are either expressly stated in a written agreement *or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional processes of the law or imported into the agreement from some external source.*[33]

---

[31] 1 Wn.2d 564, 96 P.2d 592 (1939).

[32] 44 Wn.2d 288, 266 P.2d 1053 (1954).

[33] *Bicknell,* 1 Wn.2d at 570-71 (emphasis added).

Here, the claims are based on the letter of engagement and Standard Terms that state that DWT would provide "high quality legal counsel" and "act on [Dr. Davis'] behalf to the best of [the firm's] ability." Neither promise expressly refers to due diligence. In particular, there is no reference to DWT's searching title or checking with medical authorities to determine whether claims against Dr. Boyd existed.

Moreover, the record shows that neither client nor counsel discussed whether DWT would perform the due diligence that now serves as the basis for the pending claims. Certainly, one would not ordinarily expect a client to negotiate such specifics of legal representation in a contract with counsel. But we must reject any argument that suggests that there was an express promise to perform due diligence where neither party discussed the subject as of the time of the contract. *Bicknell* makes clear that absent express promises in the letter of engagement that serves as the basis for the pending claims, those claims are not within the first clause of the six-year statute.

We turn to the second clause of the six-year statute. That clause brings within the statute a *"liability express or implied arising out of a written agreement."*[34] Dr. Davis argues that this clause brings his claims within the six-year statute. We disagree.

We start with the acknowledgement that a lawyer has an implied duty to perform legal services at some level of competence on behalf of his or her client.[35] Dr. Davis took the position at oral argument that DWT assumed a higher than ordinary duty of care because of its representations that it had special expertise in representing clients in the medical field. Whether or not DWT assumed a higher duty is irrelevant. The question is whether an *implied* duty to perform due diligence of the type claimed here brings the

---

[34] RCW 4.16.040(1) (emphasis added).

[35] *See Hizey*, 119 Wn.2d at 261.

pending claims within the second clause of the six-year statute. We hold that these claims are not within that clause.

Dr. Davis relies heavily on language in *Caldwell v. Hurley* to urge that we hold that the second clause of the six-year statute encompasses the pending claims. In *Caldwell*, our Supreme Court held that the clause encompassed an implied liability of contribution between two sureties on a promissory note.[36] There, Caldwell sued Hurley for contribution as co-surety on a promissory note.[37] Our Supreme Court held that the second clause of the six-year statute applied because the liability for a surety's contribution is implied from the note the surety signs.[38] Thus, the action for contribution was timely under the six-year statute. In so holding, our Supreme Court noted that Washington's six-year statute is unique in that it encompasses implied liabilities as well as express liabilities arising out of a written contract:

> The peculiar feature of our statute is that an *implied liability* arising out of a written instrument is included in the same clause with an *express liability* arising out of a written contract. The legislature evidently thereby intended that a certain class of actions should be included within the terms of said section which had not in other states been associated or connected with actions on written instruments or actions founded upon written agreements. . . . To place any other construction on our statute would be to hold that the words contained in the last clause of said [the six-year statute] were placed there without purpose or meaning.[39]

Subsequent cases hold that the second clause of the six-year statute is not as broad as its wording might suggest. *Halver* was an action for a refund by homeowners who had overpaid their construction contractor due to a

---

[36] *Caldwell*, 41 Wash. 296, 302, 83 P. 318 (1906).

[37] *Caldwell*, 41 Wash. at 299.

[38] *Caldwell*, 41 Wash. at 302.

[39] *Caldwell*, 41 Wash. at 301-02.

mathematical error in the statement for services.[40] They commenced the action a little over five years after making the overpayment. The question was whether such an action brought more than three but less than six years after the cause of action accrued was timely. Our Supreme Court refused to conclude that an implied promise to refund the overpayment in the construction contract existed for purposes of applying the six-year statute of limitations.[41] In reaching its conclusion, the court cited *Caldwell* and other cases to trace the application of the clause to different situations. Nevertheless, the court reached the result that there was no implied promise for purposes of applying the statute of limitations.

■ ■ Here, to the extent the statements contained in DWT's letter and Standard Terms constituted an implied written agreement to comply with the standard of care for attorneys, the above cases make clear that such a duty arises from sources external to the agreement. In this case, that duty is imposed by tort law. Accordingly, the second clause of the six-year statute does not encompass the implied duty to comply with the relevant standard of care in this legal malpractice case.

■ To buttress his argument that the six-year statute applies to this case, Dr. Davis points to the alleged inequities that would result if we held that the six-year statute is inapplicable. Specifically, he argues that he would be barred from pursuing his contract claim against DWT while DWT proceeds on its claim for unpaid fees under the same contract. This argument has no force because the parties correctly acknowledged at oral argument that a bar to Dr. Davis' claim on the basis of the statute of limitations does not preclude him from asserting DWT's alleged malpractice as a defense to DWT's claim for unpaid fees.[42] We see no inequity in our conclusion that the six-year statute of limitations does not apply.

---

[40] *Halver*, 44 Wn.2d at 289.

[41] *Halver*, 44 Wn.2d at 294.

[42] *Cf. Simburg, Ketter, Sheppard & Purdy, L.L.P. v. Olshan*, 97 Wn. App. 901, 912, 988 P.2d 467 (1999), (three-year statute of limitations for legal malpractice

To summarize, we conclude that the pending claims, DWT's failure to perform due diligence to check title and to check for claims against Dr. Boyd, are not based on express or implied provisions of the engagement letter. Rather, they are based on implied duties of counsel to client that do not arise from the contract. Whether that implied duty is an ordinary duty of care or something greater is irrelevant to the question of whether the six-year statute governs. Because the pending claims are not within either clause of the six-year statute, they are time barred.

We affirm the summary judgment order to the extent that it concludes that the six-year statute does not apply to these claims, although we do so on different grounds than those on which the trial court decided the issue.

### Three-Year Limitations Statute

Dr. Davis also contends that the trial court erred by concluding that the three-year statute of limitations barred his negligence claims. We agree in part.

■■ Under RCW 4.16.080(2), the statute of limitations for an action for personal injury is three years. Where a plaintiff could not have known of his or her injury or its cause, courts apply the discovery rule.[43] Under that rule, the statute of limitations begins to run when the plaintiff knows, or in the exercise of due diligence should have known, all the essential elements of the cause of action.[44] To establish a tort claim for legal malpractice, a client must prove: the existence of an attorney-client relationship that gives rise to a duty of care, breach of that duty, proximate causation, and damages.[45]

---

actions and its discovery rule did not bar a client from asserting breach of fiduciary duties as defense to his attorney's suit on accord for unpaid fees), *review granted*, 141 Wn.2d 1001 (2000).

[43] *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992).

[44] *Hibbard*, 118 Wn.2d at 744-45 (addressing RCW 4.16.080(2)); *See also Peters*, 87 Wn.2d at 406 (addressing the *oral contracts* statute of limitations, RCW 4.16.080(3)).

[45] *Hizey*, 119 Wn.2d at 260-61; *Stangland*, 109 Wn.2d at 679.

■ The record here shows that Dr. Davis' negligence claim based on DWT's alleged failure to perform due diligence as to Dr. Boyd's professional troubles accrued in January 1993. By that time, Dr. Davis discovered all the elements of that claim, as evidenced by the following excerpts from a January 26, 1993 letter he wrote to DWT:

> *[T]he failure of your law firm to perform basic due diligence in connection with the transaction has placed my entire investment at risk . . . .* Dr. Boyd represented in the contract that he was not under any investigation, and was not aware of any impending action or proceeding.
>
> I have since learned that . . . Dr. Boyd had been under investigation by the Medical Disciplinary Board . . . [and that the Board] . . . finally issued a Statement of Charges [against Dr. Boyd]. *None of this information was brought to my attention prior to the closing on May 1, [1992], despite the fact that I had retained your firm to represent me in a competent, diligent manner.*
>
> . . . .
>
> As of this date, there is a distinct possibility that I will lose my entire investment. *At a minimum, even if I am able to salvage my investment . . . I have incurred substantial expenses in connection with the practice as a direct result of the [S]tate's investigation and discipline of Dr. Boyd.* Certainly, these undisclosed medical disciplinary proceedings taint the entire transaction and bring into question the value and viability of the entire practice. Had I known of the Medical Disciplinary investigation, I never would have closed the deal.[46]

Dr. Davis also stated in a deposition that he contemplated suing DWT around the time he wrote the above letter. But he did not sue until over four years later. Therefore, even considering the tolling agreement between Dr. Davis and DWT, Dr. Davis commenced suit too long after he discovered all the elements of the claims based on DWT's alleged failure to perform due diligence to discover Dr. Boyd's

---

[46] (Emphasis added.)

professional problems. The trial court's summary dismissal of those claims, because they were barred by the statute of limitations, was proper.

Relying on *Peters*, Dr. Davis argues that his claim did not accrue until September 22, 1993, when the superior court judge vacated his arbitration award. Alternatively, he contends that his claim did not accrue until 1995 when Dr. Boyd fled this country to avoid execution on the final judgment against him. Dr. Davis claims that it was not until either of these times that he knew that he was damaged by DWT's alleged negligence. According to Dr. Davis, it was not until these dates that he knew that he would be unable to recover from Dr. Boyd. We reject these arguments for two reasons.

First, *Peters* does not support Dr. Davis' argument. The *Peters* court held only that the discovery rule applied to legal malpractice claims.[47] It did not specify what event triggered discovery and thus accrual of damages. Thus, the case does not support the argument that Dr. Davis was entitled to wait to see whether he was first able to recover damages against Dr. Boyd before suing DWT.

Second, Dr. Davis' argument confuses his knowledge of the fact of damages with knowledge of the person against whom he could seek to collect those damages. The argument is contrary to the well-established rule that an action accrues as soon as the plaintiff knows the facts supporting all elements of his action. Dr. Davis has not provided any relevant case authority to support his contention that he did not incur *any* damages arising from DWT's failure to investigate Dr. Boyd until he could not recover from Dr. Boyd. In the absence of citation to relevant authority, we may assume that counsel has found none, and we need not consider the issue.[48]

Dr. Davis finally argues that the record before us does not

---

[47] *Peters*, 87 Wn.2d at 406.

[48] *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171, *cert. denied*, 439 U.S. 870, 99 S. Ct. 200, 58 L. Ed. 2d 182 (1978).

support summary dismissal of his claim that DWT failed to obtain a title search to determine the status of title to the building at closing. We agree.

Dr. Davis claims he did not learn until the fall of 1995 that Dr. Boyd did not own the building. Assuming, as we must in this summary judgment proceeding, that his assertion is correct, DWT must show that Dr. Davis should have known of the May 1992 title problem when his lawyer obtained a June 1993 title search showing that Dr. Boyd was not in title. If this malpractice claim of Dr. Davis accrued in June 1993, then the September 1997 commencement of this lawsuit was untimely, even considering the tolling agreement. To support its contention that Dr. Davis knew by June 1993 that Dr. Boyd did not have title in May 1992, DWT points to the June 1993 communications between Dr. Davis' then-counsel, Bogle & Gates, and Dr. Boyd's then counsel, Perkins Coie. The communications show that Dr. Davis knew, as of June 1993, that Dr. Boyd did not have title to the building as a result of a recent title search. According to DWT, Dr. Davis' knowledge of the state of title in June 1993, together with his knowledge of other adverse information about Dr. Boyd, caused the three-year statute to accrue in June 1993.

What Dr. Davis knew and when he knew it are material questions on which reasonable minds could differ. Thus, summary judgment on those questions was improper.

The primary question is whether Dr. Boyd had title at closing in May 1992 when he gave Dr. Davis the option to purchase and Dr. Davis incurred the obligation to pay rent to Dr. Boyd. A related question is whether Dr. Boyd's June 1993 representations, through his then-lawyers, were matters on which Dr. Davis was reasonably entitled to rely so as to stop further inquiry. Neither of these questions can properly be answered on the basis of the record before us.

It does not necessarily follow that because title to the building was not vested in Dr. Boyd in June 1993 that it was not vested in him in May 1992. The crucial question is whether Dr. Boyd was vested with title at the time he gave

the option in 1992, not the status of title over a year later. That is a material factual question central in determining when Dr. Davis knew of all elements of his claim. Moreover, whether the June 1993 explanation that Dr. Boyd's then-attorneys provided to Dr. Davis was plausible in light of all the information he then had at his disposal is likewise an issue on which the finder of fact must make a determination. This record is simply insufficient to support the conclusion that Dr. Davis knew or should have known by June 1993 the factual basis of all elements of his claim concerning the alleged failure of DWT to obtain a title search prior to closing.

*Denny's Restaurants, Inc. v. Security Union Title Insurance Co.*,[49] on which DWT relies, is distinguishable. There, Denny's purchased a restaurant in Mount Vernon and later discovered that its title insurer at closing failed to detect defects in the title. As a result, the restaurant lost 60 feet of parking space. We held that Denny's negligence claim against its title insurer accrued when it discovered the title defects because it then had knowledge of all elements of its cause of action. Specifically, we noted that Denny's by then had knowledge that its injury was proximately caused by the title insurer's failure to discover and disclose the title defects. The injury was purchasing a leasehold estate that was worth less than the consideration paid.

Here, the injury is also the purchase of a leasehold estate that may be worth less than the consideration Dr. Davis paid because of undiscovered title defects at closing. But there are genuine issues of material fact as to when Dr. Davis knew or should have known of his claimed injury. Whether it was in June 1993 or in the fall of 1995 are factual determinations to be made at trial. Accordingly, we reverse the trial court's summary dismissal of Dr. Davis' negligence claim on failure to discover the state of title at the time of closing.

We affirm the order of summary judgment to the extent

---

[49] 71 Wn. App. 194, 859 P.2d 619 (1993).

that it bars the claims under the six-year statute and the claims under the three-year statute dealing with due diligence regarding Dr. Boyd's professional problems. We reverse the summary judgment dismissal of the claim regarding failure to obtain a title search. We remand for trial on that latter claim and the counterclaim for fees by DWT.

AGID, C.J., and APPELWICK, J., concur.