Merrimack
No. 2000-216

ALEXANDER MACMILLAN & a.

v.

BRACKETT L. SCHEFFY & a.

December 24, 2001

*Whittington Melendy & Girdwood, P.C.*, of Hanover (*W. E. Whittington* on the brief and orally), for the plaintiffs.

*Brackett L. Scheffy*, by brief and orally, *pro se.*

NADEAU, J. The plaintiffs, Alexander MacMillan, Trustee of the Dickson Family Irrevocable Trust, and Tracy and Patricia Dickson, appeal, and defendant Brackett L. Scheffy cross-appeals, rulings of the Superior Court (*Manias*, J.) in this action arising out of a sale of real estate. We reverse and remand.

The jury could have found the following facts. In 1987, defendants Stephen and Karen Toy bought a fifteen-acre parcel in Sutton, which they subdivided into three lots (lots one, two and three). They sold lots one and three in 1988. In the deed to lot one, the Toys granted the buyer a restrictive covenant over the lot which they retained, *i.e.*, lot two, which prevented the building of any structure or improvement more than 240 feet from Shaker Street. In 1990, the Toys sold lot two to the Dicksons. Scheffy, an attorney, prepared the deed, but did not include the restrictive covenant. The Dicksons later deeded the property to an irrevocable trust, of which plaintiff MacMillan is trustee.

After learning of the restrictive covenant, the plaintiffs brought suit against, among others, the Toys and Scheffy. The plaintiffs alleged, among other things, that Scheffy committed legal malpractice because he knew or should have known, at the time he drafted the deed to the Dicksons, that the warranty covenants he included were untrue. At trial, the court directed a verdict against Scheffy on the issue of liability. The jury found that the plaintiffs were entitled to $80,000 in damages, but concluded that the evidence did not establish that Scheffy's legal fault was "a proximate cause of the damages . . . awarded to the plaintiffs, against the Toys." The Toys moved for clarification of the jury's verdict, which the trial court granted, ruling, in part, that "the jury awarded the plaintiffs nothing on their claim against Mr. Scheffy."

The plaintiffs appeal, arguing that while the jury found that Scheffy was not liable to *the Toys* on their cross-claim, they found *the Dicksons* entitled to an $80,000 award against both the Toys and Scheffy. The plaintiffs also raise a second question on appeal, regarding setoff, that we deem waived because it was not briefed. *See Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 297 (1999). Scheffy cross-appeals, arguing, among other things, that the trial court erred in directing a verdict against him. The plaintiffs argue that Scheffy waived this argument by failing to timely raise it. We

reject this contention, as we previously granted Scheffy's motion for late entry of his cross-appeal. Because we agree with Scheffy's cross-appeal on the issue of the directed verdict, we need not address the plaintiffs' appeal.

Scheffy contends that in directing a verdict against him, the trial court erroneously extended the holding of *Simpson v. Calivas*, 139 N.H. 1, 4 (1994). In *Simpson*, a testator's son brought a malpractice action against the attorney who drafted his father's will, alleging that the will failed to incorporate the testator's actual intent. *See id.* at 3. We held that the son could maintain an action both in contract, under a third-party beneficiary theory, and in tort, under a negligence theory. *See id.* at 7. In addressing the negligence theory, we observed that a duty generally arises out of a relationship between the parties and that a contract may supply such a relationship, but that "in general the scope of such a duty is limited to those in privity of contract with each other." *Id.* at 4 (quotation omitted). We recognized an exception to the privity rule under the circumstances presented, however, and held that "an attorney who drafts a testator's will owes a duty of reasonable care to intended beneficiaries." *Id.*

The plaintiffs argue that the trial court correctly found Scheffy liable under *Simpson* because he admitted that the Dicksons were intended beneficiaries of his services. *See Fox v. Pollack*, 226 Cal. Rptr. 532, 535 (Ct. App. 1986) (observing that one of the limited situations in which attorneys have been held liable to non-clients is where "the non-client was an intended beneficiary of the attorney's services"). Specifically, the plaintiffs point out that Scheffy was asked at trial whether he "understood that the intended beneficiaries of the deed that [he] wrote . . . were the Dicksons," to which he answered affirmatively.

■ We disagree that this testimony is an admission of an element of liability. Whether the Dicksons can be understood to be the intended beneficiaries of the deed, in the sense that they are the grantees under it, does not determine whether they were the intended beneficiaries of Scheffy's services in drafting the deed. We agree with the Supreme Court of Illinois that "for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982). We recognized a similar requirement in *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 903 (1982), in which we found the duty alleged to be owed by an accounting firm to a non-client in a negligent misrepresentation action to be "not entirely dissimilar to the duty we have held a promisor owes to an intended third-party beneficiary." We then observed that a third-party beneficiary relationship requires that the

contract be expressed so as to "give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract." *Id.* (quotation omitted).

■ There was no evidence that the primary purpose of employing Scheffy to draft the deed from the Toys to the Dicksons was to benefit or influence the Dicksons. Scheffy testified that he represented the Toys from 1984 through the sale of lot two to the Dicksons in 1990 and thereafter. He testified that he had no memory of who asked him to prepare the deed, but that his usual practice was to prepare the deed for the seller, who generally would not be interested in having a title search done. Scheffy testified that the general practice is to "depend on the buyer, the buyer's bank, the buyer's attorney, the bank's attorney, those people on that side of the transaction to come up with any title defects if there are any or any changes in the description."

■ Scheffy's testimony highlights an additional reason we decline to extend the holding of *Simpson* in this situation. In general, "courts recognize that property transactions involving sales or security interests are adversarial in nature." R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 30.4, at 11 (4th ed. 1996). "Where a client's interest is involved in a proceeding that is adversarial in nature, the existence of a duty of the attorney to another person would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client." *Pelham,* 440 N.E.2d at 100. Thus, we decline to impose on an attorney a duty of care to a non-client whose interests are adverse to those of the client.

Accordingly, we reverse the directed verdict against Scheffy and remand.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.