U.S. District Court
No. 2002-129

THOMAS K. SISSON

v.

SHARI JANKOWSKI, ESQ. & a.

Submitted: July 26, 2002
Opinion Issued: November 15, 2002

*Orr & Reno, P.A.*, of Concord (*Ronald L. Snow & a.* on the brief), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Kevin G. Collimore* on the brief), for the defendants.

BROCK, C.J. The United States District Court for the District of New Hampshire (*McAuliffe*, J.) has certified the following question of law, *see* SUP. CT. R. 34:

> Whether, under New Hampshire law and the facts as pled in plaintiff's verified complaint, an attorney's negligent failure to arrange for his or her client's timely execution of a will and/or an attorney's failure to provide reasonable professional advice with respect to the client's testamentary options (e.g., the ability to cure a draft will's lack of a contingent beneficiary

clause by simply inserting a hand-written provision), which failure proximately caused the client to die intestate, gives rise to a viable common law claim against that attorney by an intended beneficiary of the unexecuted will.

For the reasons stated below, we answer the certified question in the negative.

Because this question arose in the context of a motion to dismiss and absent a copy of the plaintiff's complaint, we assume the truth of the factual allegations recited by the court in its certification order, and construe all inferences in the light most favorable to the plaintiff. *Hungerford v. Jones*, 143 N.H. 208, 209 (1998).

In December 1998, the decedent, Dr. Warren Sisson, retained the defendants, Attorney Jankowski and her law firm, Wiggin & Nourie, P.A., to prepare his will and other estate planning documents. According to the plaintiff, Thomas K. Sisson, the decedent informed Attorney Jankowski that he was suffering from cancer, did not want to die intestate, and, therefore, wished to prepare a will that would pass his entire estate to the plaintiff, his brother. The decedent told Attorney Jankowski that he was particularly interested in ensuring that none of his estate pass to his other brother, from whom he was estranged. The record, however, does not reflect any request by the decedent that the will be executed by a date certain.

Attorney Jankowski prepared a will and other estate planning documents and, in mid-January 1999, mailed them to the decedent for his review and execution. The decedent was injured in mid-January, however, and, therefore, did not receive the documents until January 22, 1999, when a neighbor delivered them to him at a nursing home. Three days later, the plaintiff contacted Attorney Jankowski to tell her that the decedent wanted to finalize his estate planning documents quickly because of his deteriorating condition.

On February 1, 1999, Attorney Jankowski and two other law firm employees visited the decedent in the nursing home to witness his execution of the estate planning documents. The decedent executed all of the documents except his will. After Attorney Jankowski asked him whether the will should include provisions for a contingent beneficiary, the decedent expressed his desire to insert such a clause, thereby providing that his estate would pass to a charity in the event the plaintiff predeceased him.

According to the plaintiff, the decedent's testamentary intent was clear as of the end of the February 1, 1999 meeting: the unexecuted will

accurately expressed his intent to pass his entire estate to the plaintiff. Nevertheless, rather than modifying the will immediately to include a hand-written contingent beneficiary clause, modifying it at her office and returning later that day for the decedent's signature, or advising the decedent to execute the will as drafted to avoid the risk of dying intestate and later drafting a codicil, Attorney Jankowski left without obtaining the decedent's signature to the will.

Three days later, Attorney Jankowski returned with the revised will. The decedent did not execute it, however, because Attorney Jankowski did not believe he was competent to do so. She left without securing his signature and told him to contact her when he was ready to sign the will.

The plaintiff twice spoke with a Wiggin & Nourie attorney "to discuss Attorney Jankowski's inaction regarding the will." The attorney told him that he had spoken to other firm members about the situation. Nevertheless, after February 4, 1999, Attorney Jankowski made no attempt to determine whether the decedent regained sufficient testamentary capacity to execute his will.

The decedent died intestate on February 16, 1999. His estate did not pass entirely to the plaintiff as he had intended, but instead was divided among the plaintiff, the decedent's estranged brother, and the children of a third (deceased) brother. The plaintiff brought legal malpractice claims against the defendants, alleging that they owed him a duty of care because he was the intended beneficiary of their relationship with the decedent.

For the purposes of this certified question, there is no dispute as to the decedent's testamentary intent: he wanted to avoid dying intestate and to have his entire estate pass to the plaintiff. Nor does the plaintiff claim that the defendants frustrated the decedent's intent by negligently preparing his will. Rather, the plaintiff asserts that the defendants were negligent because they failed to have the decedent execute his will promptly and to advise him on February 1 of the risk of dying intestate if he did not execute the draft presented at that meeting.

The narrow question before us is whether the defendants owed the plaintiff a duty of care to ensure that the decedent executed his will promptly. Whether a duty exists is a question of law. *Hungerford*, 143 N.H. at 211. A duty generally arises out of a relationship between the parties. *See MacMillan v. Scheffy*, 147 N.H. 362, 364 (2001). While a contract may supply the relationship, ordinarily the scope of the duty is limited to those in privity of contract with one another. *Id.* We have, in limited circumstances, recognized exceptions to the privity requirement where necessary to protect against reasonably foreseeable harm. *See Hungerford*, 143 N.H. at 211. "[N]ot every risk of harm that might be

foreseen gives rise to a duty," however. *Id.* (quotation and brackets omitted). "[A] duty arises if the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." *Id.* (quotation and brackets omitted).

"When determining whether a duty is owed, we examine the societal interest involved, the severity of the risk, the likelihood of the occurrence, the relationship between the parties, and the burden upon the defendant." *Id.* Ultimately, whether to impose a duty of care "rests on a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." *Walls v. Oxford Management Co.*, 137 N.H. 653, 657 (1993).

In *Simpson v. Calivas*, 139 N.H. 1, 4 (1994), we recognized an exception to the privity requirement with respect to a will beneficiary and held that an attorney who drafts a testator's will owes a duty to the beneficiaries to draft the will non-negligently. In *Simpson*, a testator's son sued the attorney who drafted his father's will, alleging that the will failed to incorporate his father's actual intent. *Id.* at 3. The will left all real estate to the plaintiff, except for a life estate in "our homestead," which was left to the plaintiff's stepmother. *Id.* The probate litigation concerned whether "our homestead" referred to all of the decedent's real property, including a house, over one hundred acres of land and buildings used in the family business, or only to the house, and perhaps limited surrounding acreage. *Id.* The plaintiff argued that the decedent intended to leave him the buildings used in the family business and the bulk of the surrounding land in fee simple. *Id.* at 4. The plaintiff lost the will construction action, and then brought a malpractice action against the drafting attorney, arguing that the decedent's will did not accurately reflect his intent. *Id.* at 3.

We held that the son could maintain a contract action against the attorney, as a third-party beneficiary of the contract between the attorney and his father, and a tort action, under a negligence theory. *Id.* at 7. With respect to the negligence claim, we concluded that, "although there is no privity between a drafting attorney and an intended beneficiary, the obvious foreseeability of injury to the beneficiary demands an exception to the privity rule." *Id.* at 5-6.

█ *Simpson* is consistent with the prevailing rule that a will beneficiary may bring a negligence action against an attorney who failed to draft the will in conformity with the testator's wishes. *See generally* R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 32.4, at 735 (5th ed. 2000); *Stowe v. Smith*, 441 A.2d 81 (Conn. 1981); *Lucas v. Hamm*, 364 P.2d 685, 688-89

(Cal. 1961), *cert. denied,* 368 U.S. 987 (1962); *Succession of Killingsworth,* 292 So. 2d 536, 542 (La. 1973); *Hare v. Miller, Canfield, Paddock & Stone,* 743 So. 2d 551 (Fla. Dist. Ct. App. 1999).

*Simpson* is not dispositive of the certified question, however. The duty in *Simpson* was to draft the will non-negligently, while the alleged duty here is to ensure that the will is executed promptly. Courts in several jurisdictions have declined to impose a duty of care where the alleged negligence concerns the failure to have the will executed promptly. *See Krawczyk v. Stingle,* 543 A.2d 733 (Conn. 1988); *Miller v. Mooney,* 725 N.E.2d 545 (Mass. 2000); *Charia v. Hulse,* 619 So. 2d 1099 (La. Ct. App. 1993); *Radovich v. Locke-Paddon,* 35 Cal. App. 4th 946 (Ct. App. 1995); *Babcock v. Malone,* 760 So. 2d 1056, 1056-57 (Fla. Dist. Ct. App. 2000). The majority of courts confronting this issue have concluded that imposing liability to prospective beneficiaries under these circumstances would interfere with an attorney's obligation of undivided loyalty to his or her client, the testator or testatrix.

In *Krawczyk,* 543 A.2d at 733-34, for instance, the decedent had met with his attorney approximately ten days before he died and informed her that he was soon to have open heart surgery and wanted to arrange for the disposition of his assets without going through probate. Accordingly, he directed the attorney to prepare two trust documents for his execution. *Id.* at 734. Completion of the trust documents was delayed, and by the time they were ready for execution, the decedent was too ill to see his attorney. He died without signing them. *Id.*

The Connecticut Supreme Court concluded that imposing liability to third parties for negligent delay in executing estate planning documents would contravene a lawyer's duty of undivided loyalty to the client. *Id.* at 736. As the court explained:

> Imposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen. These potential conflicts of interest are especially significant in the context of the final disposition of a client's estate, where the testator's testamentary capacity and the absence of undue influence are often central issues.

*Id.*

The Massachusetts Supreme Judicial Court has similarly reasoned that:

[I]n preparing a will[,] attorneys can have only one client to whom they owe a duty of undivided loyalty. A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate .... It is not uncommon, however, for a client to have a change of heart after reviewing a draft will

.... If a duty arose as to every prospective beneficiary mentioned by the client, the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity. The nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries.

*Miller*, 725 N.E.2d at 550-51 (quotation, ellipses and brackets omitted).

We have recently reaffirmed the importance of an attorney's undivided loyalty to a client. *See MacMillan*, 147 N.H. at 365. In *MacMillan*, we declined to extend *Simpson* to permit the buyers in a real estate transaction to sue the sellers' attorney who prepared a deed, which failed to include a restrictive covenant. We ruled that there was no evidence that the primary purpose of employing the attorney to draft the deed was to benefit or influence the buyers. *Id.* Accordingly, we held that the buyers were not the intended beneficiaries of the attorney's services. *Id.* Moreover, we held that it was imprudent to impose liability upon the attorney under these circumstances because doing so would "interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client." *Id.* (quotation omitted).

Both parties cite compelling policy considerations to support their arguments. The plaintiff asserts that there is a strong public interest in ensuring that testators dispose of their property by will and that recognizing a duty of an attorney "to arrange for the timely execution of a will" will promote this public interest. He further argues that "[t]he risk that an intended beneficiary will be deprived of a substantial legacy due to delay in execution of testamentary documents" requires the court to recognize the duty he espouses. The defendants counter that recognizing a duty to third parties for the failure to arrange for the timely execution of a

will potentially would undermine the attorney's ethical duty of undivided loyalty to the client.

After weighing the policy considerations the parties identify, we conclude that the potential for conflict between the interests of a prospective beneficiary and a testator militates against recognizing a duty of care. "It is the potential for conflict that is determinative, not the existence of an actual conflict." *Miller*, 725 N.E.2d at 550. Whereas a testator and the beneficiary of a will have a mutual interest in ensuring that an attorney drafts the will non-negligently, a prospective beneficiary may be interested in the will's prompt execution, while the testator or testatrix may be interested in having sufficient time to consider and understand his or her estate planning options. As the Massachusetts Supreme Judicial Court recognized:

> Confronting a last will and testament can produce complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a will before the client is reconciled to the result. The most simple distributive provisions may be the most difficult for the client to accept.

*Id.* at 551.

Creating a duty, even under the unfortunate circumstances of this case, could compromise the attorney's duty of undivided loyalty to the client and impose an untenable burden upon the attorney-client relationship. To avoid potential liability, attorneys might be forced to pressure their clients to execute their wills summarily, without sufficiently reflecting upon their estate planning options.

On balance, we conclude that the risk of interfering with the attorney's duty of undivided loyalty to the client exceeds the risk of harm to the prospective beneficiary. For these reasons, we join the majority of courts that have considered this issue and hold that an attorney does not owe a duty of care to a prospective will beneficiary to have the will executed promptly. Accordingly, we answer the certified question in the negative.

*Remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.